A98A1173. TURNER v. THE STATE.
(504 SE2d 229)

BLACKBURN, Judge.

Following a bench trial Kelly Lynn Turner appeals the finding of her guilt of driving under the influence of alcohol to the extent that she was a less safe driver, contending that the trial court erred by denying her motion in limine to suppress evidence that she made racial slurs while being questioned, that she failed certain field sobriety tests, and that she refused to take certain other field sobriety tests. Turner also contends that the evidence was insufficient to support the verdict. For the reasons set forth below, we affirm.

1. "When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

On December 29, 1994, Officer S. Cruz of the Fulton County Police Department arrived at the scene of a two-car collision. The vehicles were driven by Turner and Priscilla Boneau. Cruz checked for injuries, and he asked Turner for her driver's license and proof of insurance. As he did so, he detected the odor of an alcoholic beverage around Turner, and he noticed that Turner's speech was slurred. Then, while the accident was being cleared from the road, Officer Cruz placed Turner in the back seat of his patrol car both because he could not detect where the odor of alcohol was coming from and because he wanted to keep Turner out of the lane of traffic for her own safety. After the cars had been moved from the roadway, Cruz returned to his patrol car and noticed the strong odor of alcohol in his car where Turner had been detained. During Turner's motion to suppress hearing, she admitted that she had been consuming alcoholic beverages on the night of the accident.

Surmising that the odor of alcohol was coming from Turner's breath, Cruz asked Turner to submit to some field sobriety tests, which she failed to perform correctly. Specifically, Turner slurred and misplaced letters while reciting the alphabet, and, when instructed to count backwards from fifteen to five, she counted from fifteen to

zero. When walking Turner to her car, Cruz noticed that Turner was neither steady on her feet nor able to walk straight. His suspicions aroused, Cruz called for a DUI unit to come to the scene to do further testing. When the DUI unit arrived, Cruz and Turner exited the patrol car, but Turner refused to cooperate with further testing, and she would not submit to either an alco-sensor evaluation or an HGN evaluation. When asked to take the alco-sensor test, Turner stated, "you don't have a nigger's chance in the backyard," and when she was asked to undergo the HGN test, Turner replied that she could not do so because she was blind. Cruz arrested Turner for driving under the influence of alcohol and read her implied consent rights to her. Turner then responded: "You don't have a nigger's chance in the backyard of taking me to jail. . . . I was a cop in Albany for 11 years and now I'm a law student so I know how to beat you. You're not taking me to jail."[1] At the precinct, Turner refused to take an alco-sensor test again, and she claimed that her larynx was broken.

Turner maintains that the trial court erred by denying her motion in limine to suppress the evidence that she made racial slurs while being questioned without having been informed of her *Miranda* rights, and that she failed the alphabet and the counting backwards field sobriety tests and refused to take the alco-sensor and HGN tests prior to being informed of Georgia's law against self-incrimination pursuant to OCGA § 24-9-20. Turner bases these contentions on her argument that she was in police custody at the time that she was originally placed in the back seat of Cruz's patrol car. More specifically, Turner argues that she was in custody because no reasonable person in her circumstances that evening would have believed that the detention was temporary or that she was free to leave. This argument, however, lacks merit.

(a) "If the police take a suspect into custody and ask questions without informing the person of [her] *Miranda* rights, the responses cannot be introduced into evidence to establish [her] guilt. *Berkemer v. McCarty*, 468 U. S. 420, 429 (II) (104 SC 3138, 82 LE2d 317) (1984). The United States Supreme Court defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way.' *Miranda* [*v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966)]; see *Shy v. State*, 234 Ga. 816, 819 (I) (218 SE2d 599) (1975). Only statements made by a suspect while in custody and under police interrogation give rise to the issue of *Miranda* warnings." *State v. Wintker*, 223 Ga. App. 65, 66 (476 SE2d

---

[1] The evidence shows that Turner had previously worked as a police officer and that she was a law school student at the time of the accident.

835) (1996). See also *Morrissette v. State*, 229 Ga. App. 420, 421-422 (494 SE2d 8) (1997). Therefore, the Fifth Amendment protections embodied by *Miranda* would be applicable only to Turner's statements, not the results of her field sobriety tests. Id.

"In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v. California*, 511 U. S. 318 (II) (114 SC 1526, 128 LE2d 293) (1994)." (Citation and punctuation omitted.) *Wintker*, supra. "A reasonable person test . . . applies to determine whether an individual not formally arrested is nevertheless in custody for *Miranda* purposes. This occurs if, but only if, a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. A reasonable person has been defined as one neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." (Punctuation and footnote omitted.) Id. at 67.

Turner contends that, because her license was taken and she was temporarily confined in Cruz's patrol car, she was in custody. In a recent opinion involving similar facts, however, we held that such a situation does not necessarily amount to custody which would trigger protections against self-incrimination. In *Morrissette*, supra, Officer Dale Nix arrived at the scene of a one-car accident and detected a strong odor of alcohol on the driver, Morrissette. Nix took Morrissette's license, called for the assistance of Officer John Fox, an officer trained in DUI detection, and placed Morrissette into the back seat of his patrol car. The back door handles of the patrol car had been removed, making it difficult to open the doors from inside, and, regardless, "had [the driver] been able to exit the patrol car, he could not have left the scene. His own vehicle was not driveable, and even if it had been, [he] had been in an accident and had a legal obligation to remain at the scene." Id. at 421 (1) (a). The DUI officer arrived in approximately five minutes, and Morrissette was asked to perform certain field sobriety tests. After the tests, Morrissette was placed back into the patrol car while the wreck was removed and cleared. After the road was cleared, Fox arrested Morrisette and read his implied consent rights to him.

In response to Morrissette's argument that evidence of his sobriety tests should be excluded, this Court held: "Morrissette was not 'in custody.' Morrissette was in the back seat of Nix's patrol car 'less than five minutes' awaiting Fox's arrival. He was released from the patrol car as soon as Fox arrived. And the fact that Morrissette may

have had no apparent *way* of leaving and that he owed a legal duty to remain at the scene for other reasons does not mean he was 'in custody' for *Miranda* purposes. 'The fact that an officer retains a detainee's license for a short period during the course of an investigation does not necessarily mean that the detainee is in custody, even if at that point, by leaving, the detainee could be arrested for violating State law.' *State v. Pastorini,* 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996). Here, as in *Pastorini,* the detainee's driver's license was taken to enable the officers to proceed with investigating the vehicular accident in which the detainee was involved. A reasonable person would conclude under such circumstances that the detention was only temporary and not the equivalent of a formal arrest." (Citation and footnote omitted; emphasis in original.) Id. at 422 (1) (a).

As in *Morrissette,* Turner was not placed in custody at the time that she was placed into Cruz's patrol car. Furthermore, although Turner testified that she remained in the patrol car for 15 minutes, Cruz testified that part of the reason Turner was placed there was for her own safety while the accident was being cleared. Viewing all of the circumstances in this case, we find that a reasonable person in Turner's position would "conclude under such circumstances that the detention was only temporary and not the equivalent of a formal arrest." *Morrissette,* supra. There was no formal arrest of Turner until after she refused to take the alco-sensor and HGN tests at the scene of the accident. As such, she was not in custody prior to that time, and her *Miranda* rights were not triggered. Furthermore, although Turner continued to make racial slurs following her arrest, such slurs were spontaneous and were not elicited by custodial interrogation. Therefore, the trial court did not err in admitting Turner's statements.

(b) "As a general rule, no *Miranda* warnings are required while the investigating officer conducts preliminary questioning or field sobriety tests or advises a defendant of his right to an independent test. See *Keenan v. State,* 263 Ga. 569, 572 (2) (436 SE2d 475) (1993); *State v. Whitfield,* 214 Ga. App. 574 (1) (448 SE2d 492) (1994). . . . [B]ecause state law affords greater protection against self-incrimination than the federal constitution, *after arrest, Miranda* warnings must precede questioning during field sobriety tests. *State v. O'Donnell,* 225 Ga. App. 502, 503 (1) (484 SE2d 313) (1997); OCGA § 24-9-20." (Emphasis supplied.) *State v. Warmack,* 230 Ga. App. 157, 158 (495 SE2d 632) (1998). OCGA § 24-9-20 (a) provides: "No person who is charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction shall be compellable to give evidence for or against himself." However, such rights do not come into play until after a defendant has been arrested. As Turner was not under arrest until after she

refused to submit to the alco-sensor and HGN tests, the trial court properly admitted evidence of such refusals and evidence of her failure of the alphabet and counting tests.

2. Turner's contention that the evidence was insufficient to support the verdict is meritless. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The jury's verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *Kovacs v. State*, 227 Ga. App. 870 (1) (490 SE2d 539) (1997).

As an initial matter, we reject Turner's argument that the trial court based its determination only on the racial statements made by Turner. The trial court's opinion expressly shows that it considered the other evidence presented at trial in addition to the racial slurs in reaching its conclusion. As such, Turner's reliance on *Brinson v. State*, 232 Ga. App. 706 (503 SE2d 599) (1998), is misplaced. In *Brinson*, the trial court expressly stated that it found that the only evidence supporting its decision that the defendant therein was guilty of driving under the influence of marijuana was the defendant's refusal to take a state-administered drug test. In contrast, the trial court in this case clearly considered the interaction of all the available evidence in reaching its decision. As such, *Brinson* is distinguishable. Moreover, we must point out that *Brinson* is physical precedent only.

Here, Cruz testified that he smelled alcohol on Turner's breath, that Turner failed to properly complete two field sobriety tests, that Turner was unsteady on her feet, that Turner used racial slurs, and that, in his opinion, Turner was under the influence of alcohol such that she was less safe to drive. This evidence was sufficient to support the verdict against Turner. See, e.g., *Garrett v. State*, 230 Ga. App. 97 (2) (495 SE2d 579) (1998); *Bayer v. State*, 230 Ga. App. 708, 711 (4) (497 SE2d 266) (1998).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JUNE 24, 1998 —
RECONSIDERATION DENIED JULY 15, 1998 — ▮▮▮▮▮▮

*Monte K. Davis*, for appellant.
*Carmen Smith, Solicitor, Jay F. Eidex, Fay I. McCormack, Cynthia G. Strong-McCarthy, Assistant Solicitors*, for appellee.