S98A1537. BELTON v. THE STATE.

(512 SE2d 614)
</div>

BENHAM, Chief Justice.

William Jamar Belton appeals his convictions for malice murder, theft by taking of a motor vehicle, and burglary.[1] The State adduced evidence at trial to establish the following matters of fact. The 84-year-old victim was found dead in her home by a family member. Her house had been forcibly entered through a window, she had been violently strangled, the house had been ransacked, and the victim's car was missing. Shoe prints from the scene were matched to shoes recovered from Belton's Pennsylvania residence after his arrest there for burglary. His fingerprints were on items in the victim's car, which was recovered in Pennsylvania after a chase by a police officer. A flashlight found in the car was identified as having been stolen from the victim's home. Statements made by Belton to acquaintances and to Pennsylvania authorities after his arrest there set forth a variety

---

[1] The crimes were committed on August 31, 1995, and Belton was indicted on December 8, 1995, for malice murder, two counts of felony murder, theft by taking, and burglary. He was convicted of all charges at a jury trial conducted March 10-18, 1997, and was sentenced to life imprisonment for malice murder, and to consecutive sentences of 20 years for theft by taking and burglary. The felony murder convictions stood vacated by operation of law. Belton's motion for new trial, filed April 10, 1997, and subsequently amended, was denied on May 19, 1998. Pursuant to Belton's notice of appeal filed May 27, 1998, this appeal was docketed in this Court on June 18, 1998, and was submitted for decision on the briefs.

of conflicting versions of how Belton came to be in possession of the victim's car, but in all versions, he came into possession of the car in close proximity to the victim's home on the night of the victim's death.

1. "A conviction based on circumstantial evidence is authorized when every reasonable inference and hypothesis except that of guilt is excluded by the evidence. [Cit.]" *Mullins v. State*, 269 Ga. 157 (1) (496 SE2d 252) (1998). The evidence presented by the State in this case, viewed in the light most favorable to the jury's verdict, authorized the jury to find that every reasonable hypothesis except Belton's guilt was excluded. Id. The evidence adduced at trial was sufficient to authorize a rational trier of fact to find Belton guilty beyond a reasonable doubt of malice murder, theft by taking, and burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Although the trial court had previously granted a motion in limine prohibiting any reference to gangs, the prosecuting attorney asked the first panel of prospective jurors, in the presence of the two other panels available for the trial, whether any of them were members of or related to members of such gangs as the Crips, the Folks, or the Bloods. No jurors responded and the question was not repeated to the other panels. Belton subsequently moved for a mistrial, contending that the question violated the trial court's order and put his character in issue. The trial court denied the motion, noting that the jurors had not reacted and that the question had been asked only once. Implicit in the trial court's ruling is an observation that the question had no impact on the jury. "Whether to grant a mistrial is a matter within the discretion of the trial court, and that discretion will not be interfered with on appeal 'unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial.' [Cit.]" *Cowards v. State*, 266 Ga. 191 (3) (c) (465 SE2d 677) (1996). The trial court was in a unique position to observe the jurors who heard the question and we find no abuse of discretion in the trial court's decision that a mistrial was not necessary.

3. In conjunction with a ground of his motion for new trial alleging ineffective assistance of counsel, Belton sought funds to hire an expert to examine biological material recovered from the crime scene. The purported ineffectiveness was trial counsel's failure to have the material tested before trial. Belton argued to the trial court that before he could show the deficient performance prong of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), he needed to determine whether testing would have produced exculpatory evidence. In support of the relevancy of such test results, Belton points to testimony by one of his defense counsel that the defense was surprised at trial by testimony from a medical examiner that the location of some of the blood stains was consistent with the stains

having a source other than the victim.

The problem with Belton's argument is that it depends entirely on hindsight. "To show deficient performance, [a defendant] must demonstrate that . . . counsel's performance was not reasonable under the circumstances confronting . . . counsel at the time, without resorting to hindsight. [Cit.]" *Turpin v. Mobley*, 269 Ga. 635 (3) (502 SE2d 458) (1998). Rather than focusing on what testing would have shown had it been sought, the proper emphasis is on whether counsel's actions, under the circumstances then existing, were reasonable. *Stansell v. State*, 270 Ga. 147 (2) (510 SE2d 292) (1998). One of Belton's defense counsel testified at the hearing on Belton's motion for funds that the defense chose not to have testing done because the State had not done so, and the defense could argue that the State's failure to do so left a reasonable doubt that Belton was the perpetrator. The question to be answered by the trial court, then, was whether that strategic decision was reasonable under the circumstances defense counsel faced in preparing for trial, not whether post-trial testing would have actually revealed the presence of another person at the scene. What post-trial testing would show is irrelevant to the question of whether defense counsel was ineffective in deciding not to pursue pre-trial testing. Likewise, the hearing testimony of one of Belton's defense counsel regarding the trial testimony of the medical examiner is not relevant to the decision made before trial not to seek funds to test the evidence from the crime scene.[2]

The question of whether to provide funds for a defendant to obtain expert testimony is a matter of the trial court's discretion. *Castell v. State*, 250 Ga. 776 (4) (301 SE2d 234) (1983). Since the testing would not establish whether defense counsel's decision not to test before trial was reasonable, we find no abuse of discretion in the trial court's denial of the request for funds for scientific testing.

4. The State presented two witnesses as experts in the identification of shoe prints. Belton objected at trial to the admission of such evidence on the ground that there had been no showing pursuant to *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982), that shoe print identification has reached a level of verifiable certainty. After hearing the qualifications of the witnesses, the trial court ruled that a sufficient foundation had been laid for their testimony as experts. Belton contends on appeal that the admission of the testimony was

---

[2] Though the testimony is not relevant to the issue before the trial court, we note that defense counsel's recollection of the medical examiner's testimony was faulty: the medical examiner merely admitted on cross-examination that it was possible that some of the blood or vomit at the scene could have come from someone other than the victim, but testified further that the placement of the blood was consistent with the victim's injuries.

error because the trial court had not made the appropriate finding under *Harper*.

The fatal flaw in Belton's argument on this position is that although the witnesses were presented as experts, it was apparent that their testimony did not deal with scientific principles but with observation and comparison of physical objects, with matters not of science but of skill and experience. See OCGA § 24-9-67. This issue is comparable to that addressed by the Court of Appeals in *Hawkins v. State*, 223 Ga. App. 34 (1) (476 SE2d 803) (1996). There, the Court of Appeals held that although the horizontal gaze nystagmus test was subject to the *Harper* standard, basic sobriety tests such as the "ABCs," "walk and turn," and "leg lift"

> are physical dexterity exercises that common sense, common experience, and the "laws of nature" show are performed less well after drinking alcohol. The screening of these gross motor skills is hardly the type of "scientific principle or technique" to which *Harper* referred, and this Court will not hold these physical manifestations of impairment, which could be as obvious to the layperson as to the expert, to such a standard of admissibility.

*Hawkins*, supra at 36. Likewise, the comparison of shoe prints to the external physical characteristics of particular shoes is not a matter of scientific principle or technique. Since *Harper* and its standards are not applicable to the testimony involved in this case, the trial court did not err in failing to apply it.

5. The State sought to introduce evidence of four independent offenses, all burglaries. Belton enumerates as error the trial court's decision to permit the introduction of evidence of three of those offenses. In a written order in the record, the trial court set forth its reasons for admitting the evidence, addressing each of the three elements required by *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991). The record supports the trial court's finding that the evidence was offered for a proper purpose (identity, bent of mind, and course of conduct); that Belton was the perpetrator of the three independent offenses (he pled guilty to two of the offenses and was positively identified by the victim of the third offense, a person who was acquainted with Belton); and that the independent offenses were either so similar to or logically connected to the offense for which Belton was being tried that proof of the earlier offenses was probative of his guilt of the present offense (one offense was similar in that Belton entered a residence by force, subdued the victim, and ransacked the house; another offense was similar in that he entered through a window as in the present case, left a shoe print as in the present case, and attempted

to steal a vehicle, as he succeeded in doing in the present case; and the third was logically connected in that Belton escaped from the scene in the car stolen from the victim in the present case). The trial court's ruling admitting the evidence was correct. Id.

6. Contrary to Belton's argument on appeal, the trial court did not err in refusing to charge the jury on theft by receiving. A defendant is not entitled to an instruction on an offense for which he is not being tried, and which is not a lesser included offense of the one he is defending. *Evans v. State*, 252 Ga. 312 (3) (314 SE2d 421) (1984). Theft by receiving was not an offense for which Belton was indicted and is not an offense included in either theft by taking (*Lee v. State*, 259 Ga. 230 (3) (378 SE2d 855) (1989)) or burglary. *Breland v. Smith*, 247 Ga. 690 (2) (279 SE2d 204) (1981).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 22, 1999 —
RECONSIDERATION DENIED MARCH 18, 1999.

*Cauthorn & Phillips, Thomas E. Cauthorn III, Jason L. Nohr,* for appellant.

*Benjamin F. Smith, Jr., District Attorney, Debra H. Bernes, Nancy I. Jordan, Charles M. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorneys General,* for appellee.