## A99A0797. GUNN v. THE STATE.
### (514 SE2d 77)

JOHNSON, Chief Judge.

Rhonda Gail Gunn appeals from the superior court's order affirming her conviction for driving under the influence of alcohol entered in the Probate Court of Butts County. See OCGA § 40-6-391 (a) (1). Gunn contends the trial court erred in admitting into evidence the Intoxilyzer 5000 certificate of inspection, her statements, and the results of her field sobriety tests. We affirm.

1. Gunn argues that the trial court erred in denying her motion to suppress the results of her field sobriety tests and the statements she made in response to the investigating officer's questions because she was in custody and had not been read her *Miranda* warnings. We disagree.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

On February 1, 1998, a trooper with the Georgia State Patrol responded to a single car accident on Interstate 75 in Butts County. He observed skid marks leading from the road to a blue Nissan which had come to rest about 50 feet off the roadway and down an embankment. A few minutes later, a deputy with the Butts County Sheriff's Office arrived with Gunn in the back seat of his patrol car. The deputy had transported Gunn from a pay phone back to the scene of the accident. The trooper noticed that Gunn was dirty, likely from having climbed up the embankment, and had a strong odor of an alcoholic beverage about her. The trooper testified that he had not placed Gunn under arrest when he began questioning her. Further, he did not believe the deputy had arrested Gunn but was simply assisting her in getting back to her car.

The trooper questioned Gunn as she sat in the back seat of the patrol car with the door open. Gunn admitted that she had been drinking and agreed to take an alco-sensor test. After the trooper obtained a positive reading on his portable alco-sensor, he placed Gunn under arrest and read her the implied consent warnings. The

trooper took Gunn to the Butts County Sheriff's Office. There, she agreed to submit to an Intoxilyzer 5000 breath test. Gunn had a blood alcohol concentration of .137.

As we recently reiterated,

"[i]f the police take a suspect into custody and ask questions without informing the person of her *Miranda* rights, the responses cannot be introduced into evidence to establish her guilt. The United States Supreme Court defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of her freedom of action in any significant way.' Only statements made by a suspect while in custody and under police interrogation give rise to the issue of *Miranda* warnings." Therefore, the Fifth Amendment protections embodied by *Miranda* would be applicable only to [Gunn's] statements, not the results of her field sobriety tests.

(Citations omitted.) *Turner v. State*, 233 Ga. App. 413, 414-415 (1) (a) (504 SE2d 229) (1998); *Morrissette v. State*, 229 Ga. App. 420, 421-422 (1) (a) (494 SE2d 8) (1997). Moreover, although Gunn was seated in the back of a patrol car when she was questioned, she was not "in custody" for *Miranda* purposes. Gunn was in the patrol car because she had been transported back to the scene of the accident. She had a duty to remain at the scene during the investigation of the accident. OCGA § 40-6-270 (a). A reasonable person would conclude that, under these circumstances, Gunn's detention was temporary and not the equivalent of a formal arrest. See, e.g., *Johnson v. State*, 234 Ga. App. 116, 117 (2) (506 SE2d 234) (1998); *Turner v. State*, supra; *Morrissette v. State*, supra.

2. Gunn also contends the trial court erred in admitting the Intoxilyzer 5000 certificate of inspection as a business record because the state failed to lay a proper foundation. Pretermitting whether the state met the foundational requirements for admitting the certificate as a business record under OCGA § 24-3-14 (b), the state did satisfy the foundational requirements of OCGA § 40-6-392 (f). Under that statute,

the "foundation" for the admission of such certificate is: (1) the certificate is signed under oath by the inspector; and (2) the certificate contains the requisite language of OCGA § 40-6-392 (f). Once completed as specified under the statute, the certificate "is admissible in any court of law," without further proof. . . . OCGA § 40-6-392 (f), itself, contains

the "proper foundation" for admission of a certificate of inspection. After this proper foundation has been satisfied, the document may be admitted. A further foundation under the "business records exception," OCGA § 24-3-14 (b), is rendered unnecessary by legislative enactment.

*Jackson v. State*, 233 Ga. App. 568, 572-573 (2) (b) (504 SE2d 505) (1998). The trial court did not err in admitting the certificate of inspection.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED MARCH 12, 1999 — ▮▮▮▮▮▮▮▮▮▮▮

*Virgil L. Brown & Associates, Larkin M. Lee*, for appellant.

*Tommy K. Floyd, District Attorney, Sandra A. Graves, Charles C. Spahos, Assistant District Attorneys*, for appellee.