A01A0862. CANNON v. THE STATE.
(552 SE2d 922)

ELLINGTON, Judge.

A Rabun County jury convicted James Bentley Cannon of rape, OCGA § 16-6-1; burglary, OCGA § 16-7-1; and aggravated assault,

OCGA § 16-5-21. Following the denial of his motion for new trial, Cannon appeals, contending the trial court erred in denying his motion to set aside a prospective juror for cause, in admitting certain scientific evidence, and in not merging the offenses of aggravated assault and rape. Cannon also argues he received ineffective assistance of counsel. For the reasons which follow, we reverse.

1. Cannon contends the trial court abused its discretion in denying his motion to set aside a prospective juror who was friends with the victim and was acquainted with Cannon, who had had a detailed conversation with the victim about the crime, and who expressed doubts about her ability to be impartial. We agree.

The test for disqualification for favor or partiality under OCGA § 15-12-164 (a) is whether a potential juror's mind is not "perfectly impartial between the state and the accused." See *Jordan v. State*, 247 Ga. 328, 339 (6) (276 SE2d 224) (1981). Despite being inclined in favor of either party, a juror will not be disqualified for·cause if she will be able "to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citations omitted.) *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). This court will reverse a trial court's decision regarding whether to discharge a prospective juror on grounds of favor only when the record as a whole shows an abuse of discretion. *Brown v. State*, 246 Ga. App. 60, 65 (2) (539 SE2d 545) (2000).

In this case, when the panel was asked whether anyone knew Cannon, the prospective juror at issue responded, "Yes, I know him from when he was a young boy in school. . . . I worked in the cafeteria." The prosecutor asked whether her acquaintance with Cannon would affect her ability to serve as a fair and impartial juror. The juror responded, "It might." The prosecutor asked whether the juror could base a verdict solely on the evidence and the law as given by the court. The juror responded, "I would try." The court then instructed her to give a "yes or no" answer and asked, "Would you be able to lay aside any previous experience or knowledge of [Cannon] and . . . decide this case based solely on the evidence that you hear and the law that I read to you in this case." The juror responded, "Yes, sir."

The prosecutor asked whether any of the jurors had talked to anyone with first-hand knowledge of the case. The same juror responded that she had talked to the victim. The prosecutor asked whether her discussion with the victim would influence her ability to be a fair and impartial juror. The juror responded, "I'm just not sure. I just couldn't answer that." The court asked, "Could you lay what y'all have talked about aside and render a verdict in this case based solely on the evidence that you hear and the law I read to you?" The juror responded, "Yes."

Cannon's counsel followed up by asking how long the juror had known the victim. The juror responded, "For a few years. I work in a little gift shop, and she was one of my customers." Counsel asked whether the juror and the victim had discussed the events forming the basis of the charges. The juror responded affirmatively and indicated that the conversation was "right after the incident happened." Counsel asked how the conversation started, and the juror responded, "We were friends. . . . She just kind of told me." The juror indicated they talked for 20 to 30 minutes. Counsel asked how her relationship with the victim and their conversation about the crime would affect her service as a juror. The juror responded, "I'm just not sure," and stated that it might affect her emotionally. Counsel asked whether the juror would be able to treat the victim's testimony like that of any other witness. The juror responded, "Probably so. Yes. I think I can."

Cannon's counsel moved to excuse the juror for partiality based on her relationship with the victim and her extrajudicial knowledge of the crime. Without further explanation, the trial court ruled as follows: "[B]ased on the responses [she] gave[,] I'm going to keep [her] in the case." Cannon exercised a peremptory strike to excuse the juror.

"[A] juror may be found disqualified even though he insists he is not biased; therefore, the juror's opinion of his qualification is by no means determinative." *Jones v. State*, 232 Ga. 324, 330 (206 SE2d 481) (1974). "When ruling on a potential juror's qualifications, the trial court must make a factual determination based on all the circumstances known to the court, including, but not limited to, the juror's own opinion of his impartiality." *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992). "[A] trial court may not rely solely on a prospective juror's assurances of his impartiality where the record shows on its face that the juror has a compelling bias or interest in the outcome of the case" such as a close relationship with either the defendant or the victim. (Citations omitted.) *McClain v. State*, 267 Ga. 378, 380-381 (1) (a) (477 SE2d 814) (1996).

In this case, after the juror revealed her relationship with the victim and expressed doubts about her ability to be impartial, the trial court followed the common practice of "rehabilitating" the juror by asking whether she could lay aside her reasons for being partial and decide the case based solely on the evidence and the law as given by the court. *Wilson v. State*, 271 Ga. 811, 815 (5) (a) (525 SE2d 339) (1999); *Johnson,* 262 Ga. at 653 (2).[1] Neither the trial court nor the prosecutor, however, asked the juror questions to elicit sufficiently

---

[1] See *Rucker v. State*, 270 Ga. 431, 432-433 (2) (510 SE2d 816) (1999); *Garland v. State,* 263 Ga. 495-497 (1) (435 SE2d 431) (1993); *Brown,* 246 Ga. App. at 65 (2); *Fuller v. State,* 230 Ga. App. 219-220 (1) (496 SE2d 303) (1998).

detailed information about the nature of the juror's relationship with the victim and the contents of their conversation about the crime to allow the court to make an *objective* evaluation of her partiality. See *McClain*, 267 Ga. at 381 (1) (a). Having reviewed the record as a whole, we conclude the effect of the court's questions in this case about laying aside her knowledge of the victim and the crime was "more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality." (Punctuation omitted.) *Walker v. State*, 262 Ga. 694, 696 (2) (424 SE2d 782) (1993). Further, the trial court did not articulate on the record its reasons for denying Cannon's request to set the juror aside. See *McClain*, 267 Ga. at 381 (1) (a); *Garland v. State,* 263 Ga. 495, 496-497 (1) (435 SE2d 431) (1993); *Lively,* 262 Ga. at 511 (1). Because the record shows on its face that the juror had a compelling interest in the case and that the trial court denied the motion to set aside the juror for partiality based only on her statement (under pressure) that she could be impartial, we must conclude the trial court abused its discretion in denying Cannon's motion to set aside the juror. *Lively*, 262 Ga. at 511 (1).

We deplore the significant burden a retrial will impose on the victim, her family, and her community. We are particularly troubled by the trial court's willingness to infect a trial with this kind of error when a solution (excusing the juror for partiality) was so readily available. As this Court recently observed:

> A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury. . . . The trial judge, in seeking to balance the parties' competing interests, must be guided not only by the need for an impartial jury, but also by the principle that no party to any case has a right to have any particular person on their jury.

(Footnote omitted.) *Walls v. Kim*, 250 Ga. App. 259, 260 (549 SE2d 797) (2001).

Even in the face of overwhelming evidence of guilt, however, we are precluded from finding the trial court's abuse of discretion harmless. Since at least 1879, our appellate courts have held that requiring a litigant to exhaust peremptory strikes on unqualified jurors is harmful error. *Melson v. Dickson*, 63 Ga. 682, 685-686 (1) (1879). As our Supreme Court has observed, the selection of an impartial jury is the cornerstone of the fairness of trial by jury, and, in this process,

"peremptory strikes are invaluable."[2] *Bradham v. State*, 243 Ga. 638, 639 (3) (256 SE2d 331) (1979). An accused is entitled to a full panel of *qualified* jurors (that is, jurors not subject to being excused for cause) to which to direct his peremptory strikes.[3] *Menefee v. State*, 270 Ga. 540, 542 (2) (512 SE2d 275) (1999); *Walker*, 262 Ga. at 696 (2); *Lively*, 262 Ga. at 512 (2); *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986); *Bass v. State*, 183 Ga. App. 349, 352-353 (358 SE2d 837) (1987). See OCGA §§ 15-12-135; 15-12-160;[4] 15-12-163; 15-12-164.

2. Cannon contends the trial court erred in admitting certain expert testimony because the State failed to establish that the testing procedure used had reached a scientific stage of verifiable certainty, citing *Izer v. State*, 236 Ga. App. 282 (511 SE2d 625) (1999), and *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982). We note initially that Cannon failed to preserve this enumeration for appellate review by failing to object to the court's implicit acceptance of the witness as an expert. *Moss v. State*, 216 Ga. App. 711, 712-713 (3) (455 SE2d 411) (1995). Because this issue may recur on retrial, however, we address it on the merits.

A plastics and trace evidence expert from the state crime lab testified that, using a light table, she visually compared a plastic bag found at the crime scene with a plastic bag found in Cannon's home and concluded the bags had once been joined on a roll. The State presented no evidence that visual comparison of plastic bags to determine whether they had once been joined had reached a scientific stage of verifiable certainty. But the Supreme Court of Georgia has held that expert opinions which are based only on "observation and comparison of physical objects," are "matters not of [scientific prin-

---

[2] We note that the record shows that Cannon exhausted his allotment of peremptory strikes. See OCGA § 15-12-165. Whether a defendant uses all of his peremptory strikes plays no role, however, in the evaluation of the harm caused by the refusal to strike an unqualified juror. *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986). Thus, a defendant's failure to exhaust his peremptory strikes before the last juror is selected does not render the error (the trial court's refusal to strike an unqualified juror) harmless. Id.; *Hayes v. State*, 261 Ga. 439, 441 (2) (405 SE2d 660) (1991); *Beam v. State*, 260 Ga. 784, 785 (2), n. 3 (400 SE2d 327) (1991); *Scruggs v. State*, 227 Ga. App. 35 (1), n. 1 (488 SE2d 110) (1997); *Thompson v. State*, 212 Ga. App. 175 (1) (442 SE2d 771) (1994); *Day v. State*, 188 Ga. App. 648, 649 (4) (374 SE2d 87) (1988); *Bass v. State*, 183 Ga. App. 349, 352-353 (358 SE2d 837) (1987). But see *McKenye v. State*, 247 Ga. App. 536, 537 (1) (a) (544 SE2d 490) (2001) (defendant showed no harm where trial transcript did not show that he exhausted his peremptory strikes); *McGriff v. State*, 232 Ga. App. 546-547 (1) (502 SE2d 482) (1998) (same).

[3] We disapprove the contrary statement in *Smith v. State*, 234 Ga. App. 586, 589 (2) (506 SE2d 406) (1998) ("Under OCGA § 15-12-160, a defendant in a non-death penalty felony trial is entitled to a panel of 30 jurors, of which at least 12 jurors must be qualified to serve."). It is not necessary to overrule *Smith*, however, inasmuch as the facts therein reveal the language regarding the requirements of OCGA § 15-12-160 is obiter dicta. Id. at 589-590 (2). See *Dunagan v. State*, 269 Ga. 590, 593, n. 4 (502 SE2d 726) (1998).

[4] OCGA § 15-12-160 was amended by Ga. L. 1992, p. 1981, § 1, to require a panel of 30 jurors in a noncapital felony trial and 42 jurors in a capital felony trial.

ciples] but of skill and experience." *Belton v. State*, 270 Ga. 671, 674 (4) (512 SE2d 614) (1999) (shoeprint evidence). Therefore, expert opinions based only on the observation and comparison of physical objects are excluded from the application of *Harper. Belton*, supra. See OCGA § 24-9-67.

We conclude the standards of admissibility set forth in *Harper* are not applicable to this evidence because the visual comparison of the physical characteristics of two plastic bags does not involve the analysis of scientific data. See *Carr v. State*, 267 Ga. 701, 703 (1) (482 SE2d 314) (1997). "Since *Harper* and its standards are not applicable to the testimony involved in this case, the trial court did not err in failing to apply it." *Belton*, 270 Ga. at 674 (4).

3. Cannon contends the trial court erred in failing to merge the aggravated assault conviction into the rape conviction. See OCGA §§ 16-1-6 (1); 16-1-7 (a) (1). Again, because this issue may recur on retrial, we address it on the merits. Contrary to the State's argument, Cannon preserved this issue by raising it in his amended motion for new trial. *Williams v. State*, 233 Ga. App. 217, 220-221 (4) (504 SE2d 53) (1998) (merger issue may be preserved by objection to the sentences imposed at the time of sentencing, by motion for new trial, or by motion in arrest of judgment).

Aggravated assault may merge into another violent crime where there was no "gratuitous violence employed against the victim in addition to" the force needed to complete the other offense. *Smith v. State*, 193 Ga. App. 208, 209 (1) (387 SE2d 419) (1989) (armed robbery). In this case, the indictment charged Cannon with assaulting the victim with a handgun and with raping the victim. Construed in favor of the verdict, the evidence showed the following: Cannon broke into the victim's home when she was alone and went to her bedroom. They struggled, and Cannon struck the victim on the head with a handgun. After the victim stopped struggling, Cannon tied her hands with rope and put a plastic trash bag over her head. He then moved her through the kitchen, removing the plastic bag and tying it over her eyes. In another bedroom, he forced her on the bed and raped her while her hands were tied and her eyes were covered.

There is no issue as to the victim's lack of consent to the sex acts. The element of force necessary for a rape conviction was supplied by one or more of the acts by which Cannon overcame the victim's resistance or induced her not to resist, that is, attacking the victim alone in a house where no one could come to her aid, tying her hands, blindfolding her, physically overpowering her, and putting her in fear of bodily harm. See *Roberts v. State*, 242 Ga. App. 621, 626-627 (4) (530 SE2d 535) (2000) (force by intimidation); *Seagraves v. State*, 191 Ga. App. 207, 208-209 (1) (381 SE2d 523) (1989) (force shown by tying hands, blindfolding, and putting victim in fear of injury). Even

though the jury might have found that Cannon's continued control of the handgun was the force used during the rape, a rational trier of fact could reasonably have concluded that the aggravated assault with the handgun was completed before Cannon forced the victim to another location and raped her; therefore, the offenses do not merge as a matter of fact. *Culver v. State*, 230 Ga. App. 224, 232 (8) (496 SE2d 292) (1998) (no merger where rapist assaulted the victim by shoving a gun against her face as she drove, then ordered her to drive to another location, where he raped her). Because the assault with the handgun constituted gratuitous physical violence separate from the forced sex acts, the trial court did not err in imposing judgment on both counts. *Taylor v. State*, 202 Ga. App. 671, 672 (415 SE2d 483) (1992).

4. Cannon's contentions regarding effectiveness of counsel are moot in light of our holding in Division 1.

*Judgment reversed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED JULY 27, 2001.

*Scott B. Barloga*, for appellant.

*Michael H. Crawford, District Attorney, Robert D. Cullifer, Assistant District Attorney*, for appellee.