## A02A1125. FOSTER v. THE STATE.
(574 SE2d 843)

PHIPPS, Judge.

David Foster was convicted of driving under the influence of alcohol to the extent he was a less safe driver (DUI), driving with a suspended license, and failure to maintain lane. His motion for new trial was denied. On appeal, he challenges the sufficiency of the evidence, admission of his statements to police, and the trial court's refusal to strike a juror for cause. The record shows that the evidence was sufficient and that the trial court did not err in admitting Foster's statements. The record also reveals that the trial court's refusal to strike a juror for cause was error. Accordingly, we reverse.

1. Foster challenges the sufficiency of the evidence. We review the evidence in the light most favorable to the jury's verdict and determine whether a rational trier of fact could have found Foster guilty of the charged offenses beyond a reasonable doubt.[1]

Viewed in this light, the evidence showed that on March 14, 2000, Officers Frank and Hinson of the DeKalb County Police Department investigated a sport utility vehicle that apparently had crashed into a concrete wall alongside a highway. The vehicle had

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Wesley v. State*, 228 Ga. App. 342, 344-345 (5) (491 SE2d 824) (1997).

front-end damage, and steam was coming from the engine. The driver's door was open. The windshield on the driver's side was cracked, apparently from the inside, and there was blood on the cracked area. The passenger door was not open, and there was no damage to the windshield on that side.

No one was at the scene when the officers arrived; however, Frank noticed Foster approximately 100 yards away. Foster walked back to the wrecked vehicle. Frank saw a bleeding gash on Foster's forehead and glass in his hair. He also noticed that Foster had the odor of alcohol on his breath, that Foster had difficulty maintaining his balance, and that Foster had slurred speech. Frank summoned emergency medical assistance. Because he and Hinson were part of a canine unit that was required to remain available for narcotics investigations, he called for a uniform officer to take over the investigation.

Officer Amar of the DeKalb County Police Department responded. She noticed Foster's bleeding cut. At trial, she recounted that while paramedics were bandaging Foster's head, "I asked him . . . how he got that mark on his forehead and he said, 'I guess I hit it on the windshield.' And I said, 'Well, how did it get hit on the windshield?' He said, 'I guess while I was driving.' " Later, Foster changed his account of the accident and told Amar that he had been the victim of an armed robbery. He claimed that he had been a passenger in the vehicle when he was robbed by four individuals, one of whom had wrecked the vehicle. No evidence was found at the scene to indicate that anyone other than Foster had been present. Amar filed a report about the alleged robbery pursuant to department procedure; however, no arrest had been made at the time of Foster's trial.

Amar noticed that a strong odor of alcoholic beverage emanated from Foster's breath and person, that his speech was slurred, that his eyes were bloodshot, and that he swayed and staggered when he walked. Foster's alco-sensor test registered positive for alcohol. Because Foster had sustained a head injury, no field sobriety tests were administered. Despite the officer's request, Foster never produced a driver's license.

Officer Frost of a DUI task force for the DeKalb County Police Department was at the scene during the DUI investigation. He noticed that the tall grass near the vehicle had been "pushed down" on the driver's side, but there was no indication that the grass had been similarly matted on the passenger side or near either of the rear doors. Amar and Frost concluded that based on their observations, Foster was a less safe driver and placed him under arrest. After being read the Implied Consent Notice, Foster refused to submit to a State-administered blood test.

At trial, the State presented evidence that the vehicle belonged

to Foster's wife. It introduced evidence of Foster's two prior convictions for DUI. Also, the State presented evidence that Foster had received notice that his license was suspended, and the court announced to the jury that Foster had stipulated that on the date of the incident, his license was suspended.

We find sufficient evidence from which a rational trier of fact could have found Foster guilty beyond a reasonable doubt of DUI, driving with a suspended license, and failure to maintain lane.[2]

2. Foster contends that the trial court erred in allowing into evidence his statements to Amar, arguing that he had not been given *Miranda* warnings when he told her that he had driven the wrecked vehicle. After a *Jackson-Denno* hearing, the trial court allowed the statements based on its determination that Foster was not in custody when he made them.

Police officers at the scene of a traffic incident may conduct a "general on-the-scene investigation," which may require that persons be temporarily detained, without such being classified as custodial interrogation.[3] In determining whether a suspect was in custody for *Miranda* purposes, a court must examine all of the circumstances surrounding the interrogation.[4] An individual who has not been formally arrested is nevertheless in custody for *Miranda* purposes only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[5] A reasonable person has been defined as one neither overly apprehensive because of criminal conduct nor insensitive to the seriousness of the circumstances.[6]

The evidence adduced at the hearing showed that Foster walked to the scene of the accident on his own volition, that he was not physically restrained by the officers, and that he was not placed in handcuffs or in a patrol car until his arrest. When Amar arrived at the scene, Foster was standing between Frank and Hinson. Amar looked at the gash on Foster's forehead and then examined the wrecked vehicle for about five or ten minutes. Meanwhile, the summoned emergency help arrived and began treating Foster. Foster made the incriminating statements while he was receiving medical treatment.

---

[2] See *Jackson v. Virginia,* supra, 443 U. S. at 307; *Childress v. State,* 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001); *Lucas v. State,* 234 Ga. App. 534, 535 (1) (507 SE2d 253) (1998) (refusal to submit to breath test is circumstantial evidence of intoxication); *Eppinger v. State,* 236 Ga. App. 426 (512 SE2d 320) (1999).

[3] See *Brown v. State,* 223 Ga. App. 364, 367 (477 SE2d 623) (1996); *State v. Winther,* 223 Ga. App. 65, 67 (476 SE2d 835) (1996).

[4] *Winther,* supra, 223 Ga. App. at 66.

[5] Id. at 67.

[6] Id.

We have declined to find that custody existed in cases where suspects' freedom of movement was restricted to a greater degree than was Foster's. For instance, in *Morrissette v. State*,[7] we held that a defendant was not in custody when, after a traffic incident, he was placed in the back of a patrol car to await another officer's arrival and his driver's license had been retained by the police. We determined that a reasonable person would have concluded under such circumstances that the detention was only temporary and not the equivalent of a formal arrest.[8] In *Turner v. State*,[9] we concluded that a defendant who was detained in a patrol car for 15 minutes was not in custody. That defendant was placed in the squad car for her own safety while the accident was being cleared. Again, we found that a reasonable person would have concluded that the detention was temporary.[10] And in *Gunn v. State*,[11] where the defendant was seated in the back of a patrol car when she was questioned, the defendant was not in custody for *Miranda* purposes. There, the defendant was in the patrol car because she had been transported back to the scene of the accident. We determined that a reasonable person would have concluded that the detention was temporary and not the equivalent of a formal arrest. In this case, Foster answered Amar's questions while he was receiving medical attention. Even assuming, arguendo, that Foster was detained while his head was bandaged, we find that a reasonable person in Foster's position would have concluded that the detention was only temporary and not equivalent to a formal arrest.[12]

Foster's reliance on *State v. O'Donnell*[13] and *Hadley v. State*[14] is misplaced. In *O'Donnell*, the State stipulated that the defendant had been placed under arrest when the officer questioned him.[15] Not only was there no stipulation that Foster was in custody at the time of his statements, but the record shows that Foster had not been arrested at that time.

Likewise, *Hadley* is distinguishable. There, officers located and detained the defendant, who was their prime suspect and the focus of their arson investigation.[16] We recognized that once the officers had confirmed that the defendant was the sought-after suspect, they had

---

[7] 229 Ga. App. 420, 422 (1) (a) (494 SE2d 8) (1997).

[8] Id.

[9] 233 Ga. App. 413, 416 (1) (a) (504 SE2d 229) (1998).

[10] Id.

[11] 236 Ga. App. 901-902 (1) (514 SE2d 77) (1999).

[12] See id.; *Morrissette*, supra, 229 Ga. App. at 422; *Turner*, supra, 233 Ga. App. at 416; *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996); *Tibbs v. State*, 207 Ga. App. 273 (1) (427 SE2d 603) (1993).

[13] 225 Ga. App. 502 (484 SE2d 313) (1997).

[14] 235 Ga. App. 737 (510 SE2d 569) (1998).

[15] *O'Donnell*, supra, 225 Ga. App. at 503.

[16] *Hadley*, supra, 235 Ga. App. at 737-738.

probable cause to arrest him. Under the circumstances of that case, we determined that further questioning was nothing more than a thinly veiled effort to solicit inculpatory information and was not aimed at determining the nature of the situation.[17] However, in Foster's case, pretermitting whether the officers had probable cause to arrest Foster, under the "reasonable person" test applicable in DUI cases, Foster was not in custody when he gave the incriminating statements as the result of the officer's general on-the-scene investigation.[18]

Accordingly, the trial court did not err in admitting Foster's statements.

3. Foster argues that the trial court erred in refusing to strike Juror No. 2 for cause.

As we observed in *Walls v. Kim*,[19]

In too many cases, trial courts confronted with clearly biased and partial jurors use their significant discretion to "rehabilitate" these jurors by asking a version of this loaded question: After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkably, jurors confronted with this question from the bench almost inevitably say, "yes." Such biased jurors likely even believe that they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is capable of doing so. Once jurors affirmatively answer the "rehabilitation" question, judges usually decide to retain these purportedly rehabilitated jurors.

In *Walls*, we expressly disagreed with "the way that the 'rehabilitation' question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors."[20] While *Walls* was a civil case, such use of the rehabilitation question is clearly improper in criminal cases. This case is an example of such improper use by a trial court, which resulted in an abuse of the court's discretion in its refusal to dismiss a juror who was biased against one party.

During voir dire, Foster's attorney told Juror No. 2 that there

---

[17] Id. at 738.

[18] See *Dupont v. State*, 204 Ga. App. 262, 263-264 (2) (418 SE2d 803) (1992).

[19] 250 Ga. App. 259 (549 SE2d 797) (2001), aff'd, *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002).

[20] *Walls*, supra, 250 Ga. App. at 259.

would be evidence that Foster had "about one or two" DUI convictions and asked her whether, given that, she would have a "difficult time" following the law and being a fair and impartial juror. She responded, "I don't have a problem following the law. It's just that I don't think DUI laws are strict enough. I think once you're convicted you should not be driving." When asked whether, given the fact that Foster had been convicted of DUI, she would be able to follow the law *in this case* and be a fair and impartial juror, Juror No. 2 answered, "No."

Having heard the juror's unambiguous statement that she could not be a fair and impartial juror in this case because of her opinions regarding DUI, the prosecutor set out to rehabilitate her. She began by telling Juror No. 2 that she had given "different answer[s]" and asked, "The first time you said you would not have a problem following the law?" The juror replied, "I don't have a problem following the law but maybe it's confusing to me, too. I just don't — I have two kids that drive. That's scary." The juror interrupted the prosecutor's next statement with her own ideas concerning DUI, "Drunk driving should be its own little — I guess to me it should be its own little thing. You're convicted you should not drive. There should be no way that you are ever able to get behind the wheel of another car." Still having heard no change in the juror's previously stated position that her views on DUI would not permit her to be a fair and impartial juror in this case, the prosecutor pressed, "As a juror you would have to listen to the evidence that would come to you from the testimony and then you would have to listen to what the Judge would tell you that the law is." The trial judge then interjected, twice asking Juror No. 2 the "rehabilitation" question, although she had already unequivocally answered a version of it during questioning by Foster's attorney:

> [L]et's just put it to you as clear as I can. Okay. The state is entitled to a fair trial just like the defense is. Would the mere fact that the defendant has had a prior DUI or two mean that you would not be able to hear the facts of this particular case and render a fair verdict based on the evidence that I say is okay? You know, you get instructions from the court on what the law is but you determine the facts. Would the fact that the defendant has had prior DUI's be so prejudicial in your mind that you would not be able to render a fair and impartial decision in this case?

The juror answered the judge, "I don't think it would be so prejudicial that I couldn't because I would listen to it — what you instructed me to do." She then restated her position, "But it would still be there, you

know, would still be a thought that might skew what I might would think." She asked, "Am I making any sense?" The prosecutor resumed, asking the juror a series of questions, to which she acknowledged that she *understood* that Foster was presumed innocent, that she *understood* what was pending against him were mere allegations, and that she *understood* that the State had the burden of proving him guilty beyond a reasonable doubt. Notwithstanding the fact that Juror No. 2 had not withdrawn her statement that she believed that she could not be a fair and impartial juror in this DUI case and that even after hearing the evidence and instructions from the judge, her feelings about DUI "would still be a thought that might skew what [she] might would think," the prosecutor posed these versions of the "rehabilitation" question,

> Would you be able to look at that testimony and that other evidence and make your decision about his guilt or innocence based on the testimony and evidence you'd get in court even if that includes some prior DUI's when the judge tells you why you can consider them and when you can consider them? Would you be able to follow the law and make your decision based on what you hear in court?

Foster's attorney objected that the question was compounded and confusing, but the trial court overruled the objection. Juror No. 2 stated, "I understand what you're saying. You want me to listen to what you have to say and you want me to listen to what the judge says. You can and cannot admit — use as —." The prosecutor interrupted, stating the question this time as, "Could you do that, considering your feelings?" At that point, the juror contradicted what she had maintained throughout her previous responses and said that she could — though reiterating, "but I just have really strong feelings against DUI." The prosecutor persisted, "And that's ultimately our question. Could you do that even though you have these strong feelings?" Juror No. 2 yielded, "Yes." And with that response, the prosecutor concluded, "Thank you, ma'am."

Thereafter, Foster's attorney asked the juror whether, given her personal feelings and beliefs about DUI, she would be able to be fair and impartial. Drawing back from the answers just given to the prosecutor, she responded, "I *think* I could be fair. I can listen. I mean, just because I screwed up one time doesn't mean what I should do tomorrow based on yesterday either. So, you know, I could listen and do it but that is like one of my little things, you know, is DUI."

Foster's attorney moved the court to strike Juror No. 2 for cause, but the trial court refused to do so, stating, "I think she has said that she could be fair in the case and I will take her at her word." Thus,

Foster was forced to use a peremptory strike to exclude Juror No. 2 from the jury.

When ruling on a prospective juror's qualifications, the trial court must make a factual determination based on all the circumstances known to it, including, but not limited to, the juror's own statement that she will lay aside any bias.[21] "A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury."[22]

Before voir dire, jurors are required to take an oath to "give true answers to all questions as may be asked by the court or its authority."[23] Where a prospective juror, who has been asked whether he or she can be fair and impartial in the case,[24] answers under oath a plain, "No," and provides an explanation of her inability to be fair and impartial, the court should limit further questions to clarification of the answer. Neither the court nor the parties should incessantly interrogate the juror in a manner calculated only to elicit a response contrary to the one originally given. Interrogation for that purpose is nothing more than an effort to justify finding a biased juror qualified.

Here, the court's and the prosecutor's lengthy and repeated questioning of Juror No. 2 about laying aside her bias and deciding the case based solely on the evidence was "more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality."[25] When the juror was initially asked whether she could set aside her feelings about DUI and be a fair and impartial juror in this case, she plainly answered, "No." Yet, the record shows that subsequent voir dire of Juror No. 2 consisted of propounding her with varying versions of the same "loaded question."[26] While she maintained and repeatedly explained her position, after being confronted with the same question for the fifth time, under the weight of this pressure, she relented with a different answer. Although the trial court purported to "take her at her word" in refusing to excuse Juror

---

[21] *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992); *Cannon v. State*, 250 Ga. App. 777, 779 (1) (552 SE2d 922) (2001), disapproved on other grounds, *Jackson v. State*, 254 Ga. App. 562, 567 (4) (562 SE2d 847) (2002), aff'd, *Curtis v. State*, 275 Ga. 576 (571 SE2d 376) (2002).

[22] *Walls*, supra, 250 Ga. App. at 260.

[23] OCGA § 15-12-132.

[24] See also OCGA § 15-12-164 (a). While qualifying voir dire questions found therein are required only in felony trials, they are recommended in all criminal cases. *Jones v. State*, 221 Ga. App. 374 (1) (471 SE2d 318) (1996).

[25] (Punctuation omitted.) *Cannon*, supra, 250 Ga. App. at 780; see also *Walker v. State*, 262 Ga. 694, 695-696 (2) (424 SE2d 782) (1993).

[26] See *Walls*, supra, 250 Ga. App. at 259.

No. 2 for cause, a trial court may not rely solely on a prospective juror's isolated and extracted statement of impartiality, where, as here, consideration of the entirety of her voir dire reveals a prospective juror with a fixed and definite bias that she was unable to set aside in deciding the case.[27] In accordance with *Walls*, Juror No. 2 should have been excused for cause, and Foster should not have been forced to use a peremptory strike to remove her.[28]

In concluding otherwise, the dissent relies on *Heath v. State*,[29] which is distinguishable. There, the prospective juror expressed her disapproval of DUI and some initial bias against the defendant based on DUI being the charge. But when asked whether she could "set aside [her] biases and prejudices and give the State and the defendant a fair trial," that prospective juror answered, "I can try my very best to do that."[30] That did not happen here. Unlike in *Heath*, consideration of the record as a whole shows that this juror's responses exceeded mere "doubt" or "reservation" as to her ability to put aside personal feelings and partiality.[31] Notably, *Heath* was decided before *Walls*, where we expressly disapproved of what occurred in this case: improper "rehabilitation" of a biased and partial juror by repeated and talismanic use of the "rehabilitation" question. *Heath* did not reach this issue.

The determination of impartiality is particularly within the province of the trial judge, and absent a manifest abuse of this discretion, we cannot require a new trial.[32] However, because the record as a whole fails to support the trial court's finding that Juror No. 2 could put aside her bias to render an impartial verdict based solely on the evidence presented at trial, the court manifestly abused that discretion.[33] An accused is entitled to a full panel of qualified jurors, who are not subject to being excused for cause, to which to direct his peremptory strikes.[34] The selection of an impartial jury is the " 'cornerstone of the fairness of trial by jury,' " and, in this process, "peremptory strikes are invaluable."[35] Because Foster was denied a full panel of qualified jurors, his conviction must be reversed.[36]

---

[27] *Cannon*, supra, 250 Ga. App. at 779.

[28] We note that the record shows that Foster exhausted his allotment of peremptory strikes. See OCGA § 15-12-125. However, whether a defendant uses all of his peremptory strikes plays no role in the evaluation of the harm caused by the refusal to strike an unqualified juror. See *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986).

[29] 223 Ga. App. 680 (478 SE2d 462) (1996).

[30] (Punctuation omitted.) Id. at 682 (3).

[31] See generally *Menefee v. State*, 270 Ga. 540, 541-542 (2) (512 SE2d 275) (1999).

[32] See id.; *Cannon*, supra, 250 Ga. App. at 780.

[33] See *Cannon*, supra, 250 Ga. App. at 780.

[34] Id. at 781.

[35] *Bradham v. State*, 243 Ga. 638, 639 (3) (256 SE2d 331) (1979); *Cannon*, supra, 250 Ga. App. at 780-781.

[36] See *Cannon*, supra, 250 Ga. App. at 781.

*Judgment reversed. Blackburn, C. J., Johnson, P. J., Smith, P. J., and Miller, J., concur. Andrews, P. J., and Mikell, J., dissent.*

MIKELL, Judge, dissenting.

I respectfully dissent to Division 3 of the majority opinion and to the judgment. Trial courts exercise broad discretion in qualifying jurors, and, on appeal, we will not disturb that discretion in the absence of manifest abuse.[37] It is well settled that:

In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. The law does not set an impossible standard on the state to obtain jurors completely free of the mere existence of any preconceived notion as to the guilt or innocence of an accused. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Irwin v. Dowd*, 366 U. S. 717, 723 (81 SC 1639, 6 LE2d 751) (1961).[38]

As the majority noted above, the following exchange took place during voir dire between the prospective juror and defense counsel:

Q: [W]ould you have a difficult time following the law and being a fair and impartial juror in this case?
A: I don't have a problem following the law. It's just that I don't think DUI laws are strict enough. I think once you've been convicted, you should not be driving.
Q: Okay. Given the fact that he has been convicted and you know that now —.
A: Right.
Q: — would you be able to follow the law in this case and be an impartial juror?
A: No.

However, the prospective juror clarified her answers in the following exchange between the state and the same juror:

Q: [Prospective juror], do you understand at this point Mr. Foster is presumed innocent?
A: Right.

---

[37] *Greene v. State*, 268 Ga. 47, 50 (485 SE2d 741) (1997); accord *Klaub v. State*, 255 Ga. App. 40, 47 (3) (564 SE2d 471) (2002).
[38] *Klaub*, supra at 47, citing *Chancey v. State*, 256 Ga. 415, 425 (3) (B) (a) (349 SE2d 717) (1986); accord *Kelly v. State*, 242 Ga. App. 30, 32 (2) (528 SE2d 812) (2000).

Q: Do you understand that what's pending against him are mere allegations?

A: Right.

Q: Do you understand that the state, which would be my side, has the burden of proof of proving him guilty beyond a reasonable doubt?

A: Yes.

Q: And the way we prove that is through testimony and evidence that would come into court through the witness stand or through documents?

A: Right.

Q: Would you be able to look at that testimony and that other evidence and make your decision about his guilt or innocence based on the testimony and evidence you'd get in court even if that includes some prior DUI's when the judge tells you why you can consider them and when you can consider them? Would you be able to follow the law and make your decision based on what you hear in court?

. . .

A: I understand what you are saying. You want me to listen to what you have to say and you want me to listen to what the judge says. You can and cannot admit — use as —.

Q: Could you do that, considering your feelings?

A: Yes, I could do it but I just have really strong feelings against DUI.

Q: And that's ultimately our question. Could you do that even though you have these strong feelings?

A: Yes.

This case is analogous to *Heath v. State*,[39] in which we affirmed the trial court's refusal to excuse a juror for cause. In *Heath*, as in the case at bar, the defendant was charged with DUI, and the prospective juror expressed her strong disapproval of drinking and driving.[40] Based on a colloquy between the court and the juror similar to the exchanges with the prospective juror in this case, we reasoned that although the juror had expressed her disapproval of drinking and driving and demonstrated some initial bias, "she affirmed her belief in the presumption of innocence, her impartiality with regard to the presentation of evidence, and her sincere intent to do her very best to

---

[39] 223 Ga. App. 680 (478 SE2d 462) (1996).

[40] Id. at 682 (3).

set aside her biases."[41] Based on that conclusion, we held that there was no manifest abuse of discretion.[42]

I believe that we should reach the same result in the case sub judice. Although the juror was candid regarding her strong feelings about drinking and driving, she ultimately testified that she could be fair and impartial and that she would be able to follow the law and make her decision based on the evidence. Under these circumstances, the trial court did not abuse its discretion in refusing to strike the juror for cause.[43]

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED NOVEMBER 26, 2002.

J. Louise Dietzen, for appellant.

Gwendolyn R. Keyes, Solicitor-General, Kimberly Sanders-Bjurmark, Assistant Solicitor-General, for appellee.