## A98A1825. THOMAS v. BAXTER.
### (507 SE2d 766)

ELDRIDGE, Judge.

This appeal arises out of an incident which occurred when the "T-top" came off of the vehicle Angela Baxter, defendant/appellee, was driving and struck the windshield of the vehicle in which Debra Thomas, plaintiff/appellant, was a passenger, causing injuries to Thomas. The case was tried before a jury in the Superior Court of Dodge County. At the close of Thomas' case, Baxter moved the trial court for a directed verdict. After hearing arguments, the trial court granted Baxter's motion and subsequently entered judgment in her favor. Thomas appeals.

On the evening of May 27, 1995, Baxter was driving a Monte Carlo owned by her boyfriend Vincent Horne.[1] Horne was a passenger in the Monte Carlo and was sitting in the back seat. This was not

---

[1] Horne, who is now Baxter's husband, was not a party to this action.

the car Baxter normally drove. However, Baxter had her own set of keys to the Monte Carlo, and she had driven it frequently during the past month when her car was not running. Sometimes, Baxter would drive Horne to work at approximately 1:00 p.m. and pick him up between 9:00 or 9:30 p.m., so that she would have the use of the vehicle.

Baxter testified that, as she was driving along Antioch Church Road, a car drove up from behind her with only one headlight. She stated that the vehicle was very close to her rear bumper. Baxter testified that initially she started to pull over, but then decided to speed up. As she increased her speed, she hit a place in the road where there were several dips or irregularities in the pavement. Baxter then testified that she had previously driven over these dips on Antioch Church Road and was aware that they were there. Baxter further testified that, in her opinion, the dips were not deep enough to do any damage and that a regular car could drive right over them. Baxter stated that when she hit the dips the night of the incident, it was "just like a normal dip. You fall down in a dip. It's not like your car is bouncing all over the street." She went on to testify that the bouncing action caused by the dip was not a hard bounce. Baxter testified that she did not know when the T-top came off the Monte Carlo, but she thought it probably came off when she hit one of the dips.

Vincent Horne testified that a vehicle came up behind them with bright lights and that he told Baxter to speed up. Horne stated that Baxter was going about 40 mph when the car came up behind them and increased her speed to no more than 50 or 55 mph; there was no testimony as to the posted speed limit. Horne testified that, when the Monte Carlo hit the dips in the pavement of the road, the car bounced hard and jerked up and down, but that the jerking motion was not enough to make his head hit the top of the car. Horne stated that he and Baxter had driven on that portion of Antioch Church Road previously and, even though they usually tried to avoid the dips, sometimes they could not.

Horne further testified that the T-top is secured to the Monte Carlo with a latch and had previously never come off when they were driving. Horne stated that he had previously driven the Monte Carlo from the opposite direction over these dips at the same speed without any problem with the T-top. Horne went on to testify that he had not noticed that the T-top was loose; that he had not heard the T-top rattling or had any indication that the latch was loose; and that he had no reason to think the T-top would come off as they were driving. Horne testified that he usually did not take the T-top off in May, that it had been a week since it had been removed, and that he was the last person to remove and replace the T-top.

Horne testified that Baxter did not perform any maintenance on

the Monte Carlo, nor was she responsible for having such maintenance performed, that he did all of the maintenance on the car, and that he had not performed any maintenance on the T-top. Horne further testified that, when he had the T-top replaced by a mechanic, the Monte Carlo did not have to be repaired to make the T-top fit.

Horne did not know when the T-top came off the Monte Carlo. He testified that he knew the T-top was in place prior to the car going over the dips in the pavement. After they had gone over the dips and had proceeded up the road, Horne felt wind, looked up, and the T-top was gone. At his deposition, Horne testified that he did not know when the T-top came off, but presumed it came off when they drove over the dips.

Thomas testified to the following: On the night of the incident, her family was driving down Antioch Church Road at approximately 10:50 p.m. She was a passenger in a car driven by her husband, and they were a reasonable distance behind the car in front of them. Thomas saw a flash, and something hit the windshield, breaking it. Thomas' husband stopped the car, instructed her to put pressure on her face, and drove her to the hospital. The muscles in her right arm were severed, she had multiple cuts and abrasions on her body and face, and had to have stitches in her chin, the corner of her mouth, and her tongue. Thomas was hospitalized for four days.

Thomas further testified that Horne and Baxter had been visiting her brother-in-law, who lived next door to her, on the day of the incident. When the Thomas family left their home, she observed Horne's Monte Carlo leave her brother-in-law's house, traveling in the same direction they were traveling. When they stopped at the intersection of Zion Hill Church Road and Antioch Church Road, there was a security light, and Thomas was able to see Horne's Monte Carlo turning onto Antioch Church Road in the same direction that her family's car was turning.

Trooper Glenn Renew of the Georgia State Patrol investigated the incident. He spoke with Mr. and Ms. Thomas at the hospital and with Baxter and Horne at the National Guard Armory where they were attending a dance. Trooper Renew could not recall either Baxter or Horne mentioning a dip in the road or that a vehicle came up behind the Monte Carlo at a high rate of speed with bright lights. Trooper Renew testified that he thought Horne gave him an explanation of why the T-top came off, *but he could not remember what the explanation was.* Trooper Renew went on to testify that he thought Horne *might* have said the T-top was not properly fastened.

1. In her first enumeration of error, plaintiff/appellant alleges the trial court erred when it allowed defendant/appellee to cross-examine witness Vincent Horne and ask questions outside the subject matter of plaintiff/appellant's examination when plaintiff/appel-

lant had called the witness during her case for cross-examination under OCGA § 24-9-81.

Where a witness has been called for cross-examination under OCGA § 24-9-81, it is within the discretion of the trial court to allow such witness to be questioned by the attorney for the opposite party at the conclusion of the calling party's examination. *CSX Transp. v. Levant*, 200 Ga. App. 856 (410 SE2d 299) (1991), rev'd on other grounds, 262 Ga. 313 (417 SE2d 320) (1992); *Southeastern Metal Products v. DeVaughn*, 99 Ga. App. 569 (109 SE2d 305) (1959). The general rule is that, if an "adverse party or agent as specified in OCGA § 24-9-81 . . . is called, and a timely announcement is made by the calling party that the witness is being called for cross-examination, the calling party may cross-examine the witness and the [opposite] party may question him only by direct examination." *Colwell v. Voyager Cas. Ins. Co.*, 251 Ga. 744, 747 (309 SE2d 617) (1983).

However, while leading questions are generally allowed only in cross-examination, it is within a trial court's discretion to grant "the right to the party calling the witness and in refusing it to the opposite party when, from the conduct of the witness or other reason, justice shall require it." OCGA § 24-9-63; *Hicks v. Doe*, 206 Ga. App. 596, 597 (426 SE2d 174) (1992); *Clary Appliance &c. v. Butler*, 139 Ga. App. 233 (228 SE2d 211) (1976). "For example, it is purely within the discretion of the [trial] court as to whether the State's counsel should be permitted to lead the witness, or to cross-examine his own witness." (Citation and punctuation omitted.) *Snelling v. State*, 215 Ga. App. 263, 265 (1) (b) (450 SE2d 299) (1994). Likewise, when a witness is called for cross-examination pursuant to OCGA § 24-9-81, the trial court has the same discretion to allow counsel for the opposite party to cross-examine the witness and ask leading questions. See *Barton v. Strickland*, 208 Ga. 163 (65 SE2d 602) (1951).

"[T]rial courts exercise wide discretion in the admission of evidence and in whether to allow leading questions, and reversible error only occurs when trial courts abuse that discretion to the extent that there is prejudice and injury. Moreover, such an abuse of discretion will not constitute reversible error unless palpably unfair and prejudicial to the complaining party." (Citations and punctuation omitted.) *Hicks v. Doe*, supra at 597 (1). After examining the record, we find no abuse of discretion under the facts and circumstances of this case, where the witness was the husband of the defendant and not a party to the action and was listed as a "may call" witness for both parties.

Further, "[t]he right to a thorough and sifting cross-examination extends to all matters, relevant and material to the controversy, within the knowledge of the witness. [Cits.]" *Corley v. Harris*, 171 Ga. App. 688, 689 (2) (320 SE2d 833) (1984). " 'The purpose of cross-

examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted.' [Cit.]" *Snelling v. State*, supra at 265 (1) (a). "Moreover, the scope of cross-examination rests within the trial judge's sound discretion. [Cit.]" *Timley v. State*, 268 Ga. 611, 612 (2) (492 SE2d 214) (1997). There was no abuse of the trial court's discretion in allowing the defendant/appellee's counsel to question Horne about who had performed any maintenance on the Monte Carlo and who was responsible for having such maintenance performed, when there had been no questions or testimony on the subject matter of the car's maintenance during the course of plaintiff/appellant's examination of the witness under OCGA § 24-9-81.

2. Plaintiff/appellant also alleges that the trial court improperly granted a directed verdict to the defendant/appellee.

"A motion for directed verdict should be granted only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. OCGA § 9-11-50 (a). All evidence must be construed most favorably to the non-movant. Before the trial court can direct a verdict for the movant, he must find from the evidence that there is *no evidence of any kind* supporting the non-movant's position." (Citations and punctuation omitted; emphasis in original.) *Quality Control Elec. v. Electronic Security Svcs. Co.*, 225 Ga. App. 671-672 (484 SE2d 696) (1997).

Contrary to the assertions of the dissent, the evidence presented at trial construed most favorable to the plaintiff/appellant, as the party opposing the motion for directed verdict, fails to show any negligence on the part of the defendant/appellee. Even though there was testimony that the T-top *probably* came off when Baxter drove over the dips and irregularities in the roadway, this does not, by itself, show negligence on Baxter's part. "Negligence is not to be presumed, but is a matter for affirmative proof." (Citations and punctuation omitted.) *Cagle v. Ameagle Contractors*, 209 Ga. App. 712 (434 SE2d 546) (1993).

Evidence that Baxter increased her speed to more than 40 mph, but not more than 50 or 55 mph, prior to driving over the dips and irregularities in the roadway does not show negligence on her part without some further evidence of what the speed limit was for that area of the roadway or that such increase in speed was somehow negligent. Such evidence was not present. Also, Baxter's testimony that she had driven over this section of the roadway previously and knew its condition, and Horne's testimony that both he and Baxter usually tried to avoid going over the dips in the roadway and that when the car went over the dips in the roadway, it jerked up and down (but not

enough to make his head hit the top) does not show that Baxter was negligent. Further, negligence on the part of Baxter is not shown by Horne's testimony in his deposition, which was introduced for impeachment purposes, that he had never gone over the dips in the roadway at that speed. In addition, Trooper Renew's testimony that, based upon his conversation with Baxter and Horne, he determined that "the T-top [came] out of the vehicle and hit the windshield of the vehicle that was following them" and that he believed Horne explained the accident by saying that the T-top was not fastened down properly[2] does not show that Baxter was negligent, especially in light of Horne's testimony that he was the last person to remove the T-top and replace it. Most importantly, there was no evidence that the appellee/defendant knew or should have known that the top latch was malfunctioning or defective so that hitting a bump could dislodge the T-top.

"In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence. Where (as here) plaintiff simply fails to prove [her] case, the direction of a verdict is proper." (Citations and punctuation omitted.) *Kicklighter v. Jones*, 202 Ga. App. 654, 655 (415 SE2d 302) (1992).

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Johnson, P. J., Smith, J., and Senior Appellate Judge Harold R. Banke concur. Blackburn, J., concurs in part and dissents in part.*

BLACKBURN, Judge, concurring in part and dissenting in part.

I concur fully with Division 1 of the majority; however, I must respectfully dissent from Division 2 because there is a question of fact for jury determination as to whether Baxter was driving too fast for conditions and whether her conduct caused the accident.

The standard of review in this Court requires that if there is any evidence supporting the non-movant's position or any question of fact concerning such evidence, the motion for directed verdict should be denied. "A motion for directed verdict should be granted only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. OCGA § 9-11-50 (a). All evidence must be construed most favorably to the non-movant. Before the trial court can direct a verdict for the movant, he must find from the evidence that there is *no evidence of any kind* supporting the non-movant's position." (Citations and punctuation omitted; emphasis in original.)

---

[2] Trooper Renew's specific testimony was that he was not sure what Horne's explanation was, and that he had not made a notation of Horne's explanation in his report. However, Trooper Renew *thought* "it was something to do with it [the T-top] not being properly fastened down."

*Quality Control Elec. v. Electronic Security Svcs. Co.*, 225 Ga. App. 671-672 (484 SE2d 696) (1997).

Construing the evidence most favorably to Thomas, as the non-movant, there was evidence presented which supported Thomas' claims. Both Baxter and Horne testified that Baxter sped up prior to driving over a section of the road which contained several dips and irregularities. Baxter was driving more than 40 mph, but no more than 50 or 55 mph. Additionally, Baxter had driven over this section of road before and knew its condition. Baxter also testified that she thought the T-top came off when she hit one of the dips in the road. Horne testified that he and Baxter usually tried to avoid going over the dips in the road, but that on the night of the incident, Baxter sped up and went right over the dip, and that is when the T-top came off. Horne also testified that when the car went over the dip in the road, it bounced hard enough to jerk the car up and down. In his deposition, which was introduced for impeachment purposes, Horne testified that he had never gone over the dips in the road at that speed. Trooper Renew testified that based upon his conversation with Baxter and Horne, he determined that "the T-top [came] out of the vehicle and hit the windshield of the vehicle that was following them." Baxter told Trooper Renew "[t]he T-top come out and hit the vehicle behind her." Trooper Renew further testified that he believed Horne explained the accident by saying that the T-top was not fastened down properly. A jury could determine that Baxter was driving too fast for the condition of the road and that such conduct caused the T-top to come off.

"[Q]uestions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases. . . . [E]ven where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man." (Citations and punctuation omitted.) *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899) (1985). Whether Baxter drove too fast over the rough road, and whether the T-top came off as a result thereof and caused the incident is a jury question. The trial court erred in granting Baxter's motion for directed verdict.

DECIDED SEPTEMBER 16, 1998 —
RECONSIDERATION DENIED OCTOBER 7, 1998 —

*Dozier & Sikes, Cheryl A. Sikes*, for appellant.

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith*, for appellee.