## A01A2520. KLAUB v. THE STATE.
### (564 SE2d 471)

POPE, Presiding Judge.

Ronald Klaub was convicted by a jury of two counts of vehicular homicide, hit and run, and driving with a suspended license. He appeals his convictions, raising several arguments, including that the trial court erred by (1) failing to grant a directed verdict of acquittal as to the charge of homicide by vehicle through the commission of reckless driving; (2) failing to grant a directed verdict of acquittal as to the charge of homicide by vehicle through the violation of OCGA § 40-6-270, the hit and run statute; and (3) failing to strike a juror for cause. We reverse Klaub's conviction for vehicular homicide through the commission of reckless driving. We affirm the remainder of the judgment. In light of our holding in this case, we remand this case to the trial court for resentencing consistent with this opinion.

Viewed in the light most favorable to the verdict, the evidence presented at trial showed that on the night of December 9, 1998, between 7:00 and 8:00 p.m., Klaub told his wife, Charlene Ward, that he was going out and taking her car, a 1986 Mercury Topaz. When he returned around 11:00 p.m., Klaub informed Ward that he had hit a dog and damaged her car. Ward went to the garage and saw that the headlight had been broken and that the windshield was cracked.

On the morning of December 10, 1998, the body of Joeann Edwards Swift was found lying facedown in some leaves just off the roadway near the intersection of Moreland Drive and Hazelrig Drive. The night before, she had walked to a pay phone to call her son in New York; that conversation was the last she had with anyone. The victim's body was surrounded by automobile pieces; some of these

pieces, found in the victim's clothing and examined by the crime lab, were identified as coming from Klaub's wife's car. On the basis of an autopsy, it was surmised that the victim probably died between 12:45 a.m. and 6:45 a.m. on December 10, though the time of death could have been earlier. The victim's injuries were typical of those of a person who has hit a windshield. The cause of death was injury to the brain, and because there was very little swelling of the brain, it was estimated that the victim had died within minutes of being struck. There were no witnesses to the accident.

On December 20, 1998, Officer Britman of the Atlanta Police Department met with a black female whom he had never met. The woman, who would not give her real name and who was accompanied by a co-worker from the Home Depot across the street from the Zone 2 precinct office, told Britman that she knew who had driven the car that struck the victim on Moreland Drive, that the driver's name was Ron, and that the car had front-end damage and a broken windshield. She said that she had gotten her information from Ron's wife, Cathy, a co-worker with whom she had been drinking and smoking marijuana in a shed behind Ron's house the day before. Based on the informant's description, Britman located the house; he did a computer check on the address but found that the house belonged to a Florence Lange.

On December 23, 1998, Britman received a call from Officer Stephens of the Clayton County Police. Stephens told him that he had spoken to one of his informants, a black female, who had told him that a man named Ronald Klaub had been the driver of the vehicle which killed the victim. Britman and Stephens, along with some other officers, went to Klaub's house, where they introduced themselves to Klaub's mother, Mrs. Lange, and asked for Klaub. Informed that Klaub was not at home, the officers were then invited in by Lange and told that they could search the house. In the garage they found a 1986 Mercury Topaz with a cracked windshield and broken headlight. When asked about the damage to the car, Lange said that Klaub had told her that he had hit a dog and then had added, "That's all you need to know." He also told her that no one was to touch the car.

While Clayton County police officers remained at Klaub's house, Atlanta officers obtained a warrant. When Klaub returned, he encountered Stephens in front of his house. Klaub was read his *Miranda* rights but waived those rights and gave a statement to Stephens. Klaub said that he had loaned his wife's car to a woman named Cathy on the night of December 9, 1998. When Cathy returned the car, she was in tears; she explained that she had hit a dog and done damage to the car. Klaub stated further that because he had not wanted his wife to find out that he had loaned her car to a

female friend, he had told her that he had been the one who had been driving, hit the dog, and damaged the car.

Cathy Puckett testified that she had never driven Klaub's car and that, on the night of the incident, she had been home with her family. She admitted that she knew a black female who worked at Home Depot but said that she had not spoken with her during the period of time surrounding the incident.

1. In his first enumeration of error, Klaub maintains that the trial court erred in failing to direct a verdict of acquittal as to the charge of vehicular homicide through the commission of reckless driving.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Footnote omitted.) *Washington v. State*, 251 Ga. App. 206 (1) (553 SE2d 855) (2001).

OCGA § 40-6-390 (a) provides that "Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." Klaub argues that the record in this case is devoid of any evidence as to the manner in which the car was driven and that, in the absence of such evidence, the State has failed to prove that the car was driven in reckless disregard for the safety of persons or property. We agree.

It is clear that the offense of reckless driving may be committed in a variety of ways; thus, in order to establish a violation of OCGA § 40-6-390, the State needed only to present evidence showing that Klaub drove his car in a manner exhibiting reckless disregard for the safety of persons or property. In its brief, the State argues that there was sufficient evidence produced at trial from which the jury could conclude that Klaub drove in a reckless manner. This argument ignores the fact that the trial court granted Klaub a directed verdict as to Count 3 of the indictment, which charged Klaub with unlawfully driving "a motor vehicle in reckless disregard for the safety of the deceased, Joeann Edwards Swift, for said accused *did drive his*

*vehicle off of the roadway and into Joeann Edwards Swift."* (Emphasis supplied.)

As a basis for directing a verdict in favor of Klaub on Count 3, the trial court observed:

> [T]he only evidence there of committing an offense in that manner, of driving off the roadway, was contained in one photograph which had been admitted into evidence, which was State's Exhibit 4, which shows a tire track or tire tracks appearing to come back into the roadway after being somewhat on the shoulder and going through some kind of muddy area and then tracking back up onto the asphalt and in an area that leads directly to other items that were marked by the police, that is, either items of clothing or personal effects or car parts. But there is no testimony about that at all, and there is no evidence at all to indicate that this actually was the car in question. . . . [T]here were no tire tread comparisons or an analysis or anything like that. This could have been a car that had pulled off, parked on the shoulder and pulled off, and at sometime either that morning or in the middle of the night or sometime earlier or later — I mean, there's just no indication at all.

On the basis of this reasoning, the trial court concluded that there was insufficient evidence to sustain a finding of reckless driving by driving off the roadway and striking the victim and directed a verdict for Klaub on Count 3. Our examination of the trial transcript convinces us that the trial judge did not err in granting Klaub a directed verdict on this basis.

We recognize that reckless driving may be established by proving that a defendant was driving at an excessive rate of speed given the posted speed limit and the driving conditions existing at the time. See, e.g., *Carroll v. State*, 222 Ga. App. 560, 561 (474 SE2d 737) (1996). In this case, the forensic pathologist testified that the minimum speed of Klaub's vehicle when it struck the victim was 40 mph. Driving at this speed could amount to reckless driving under certain conditions, but the State presented no competent evidence of the driving conditions that night or of the posted speed limit. Accordingly, there is no evidence that Klaub committed reckless driving by driving at an excessive speed. *Thomas v. Baxter*, 234 Ga. App. 663, 667 (507 SE2d 766) (1998).

The State argues that there was sufficient evidence for the jury to conclude that Klaub drove the car on December 9, 1998. The State also argues that it established at trial that Klaub's car was the vehicle which struck and killed the victim. Proof of these matters does

not establish that the car was driven in a reckless manner. As the trial judge pointed out,

> it is possible that this death really was an accident. The clothing that was being worn by Ms. Swift at the time conceivably could have made her very difficult to see, depending on her position, whether it was in the road or on the side of the road or on the shoulder, wherever it may have been. But if it was in the road, it is conceivable that this entire thing was an accident, a tragic accident that caused her death, but nevertheless an accident.

There is no evidence establishing where the victim was when she was struck; she could have been several feet off the road or in the middle of the road. Likewise, there is no evidence showing that the victim would have been visible for a considerable distance, or that a reasonable driver would have seen her and been able to avoid striking her. There is no evidence that Klaub was traveling at an excessive speed, or that Klaub was driving in any other manner exhibiting a reckless disregard for the safety of persons or property. Under these circumstances, we find that the evidence was insufficient to enable any rational trier of fact to find Klaub guilty beyond a reasonable doubt of the offense of homicide by vehicle in the first degree through violation of OCGA § 40-6-390.

2. Klaub further argues that the trial court erred in failing to direct a verdict of acquittal as to the charge of vehicular homicide in the first degree, OCGA § 40-6-393 (a), through the violation of the hit and run statute, OCGA § 40-6-270 (b). Specifically, Klaub argues that the State was required to prove that violation of the statute, i.e., failure to stop and render aid, was the proximate cause of the death of the victim. Klaub contends that because expert testimony established that the victim died within a matter of minutes, Klaub's failure to remain at the scene of the accident and render assistance was not the cause of the victim's death.

In this case, the expert testimony of the forensic pathologist indicated that the victim died quickly, within ten minutes of being struck. The proximate cause of her death was the severe injury she sustained when she was struck by Klaub's vehicle. The conclusion, based on the medical evidence, is inescapable that she would have died even if Klaub had remained on the scene and rendered assistance. Thus, Klaub argues that there was no evidence that his actions in leaving the scene of the accident caused or played a substantial part in bringing about the victim's death.

Contrary to Klaub's arguments, the trial court did not err in denying his motion for a directed verdict of acquittal on this count.

The argument, advanced by Klaub and adopted by the dissent, that in order to convict a defendant under this statutory provision a victim's death must have been caused by a defendant's failure to stop and render assistance, is erroneous. The illegal act involved in this crime is causing the death or injury by the accident and then failing to stop and render assistance.

With respect to homicide by vehicle in the first degree, OCGA § 40-6-393 (a) provides, in pertinent part: "Any person who, without malice aforethought, causes the death of another person through the violation of . . . subsection (b) of Code Section 40-6-270 . . . commits the offense of homicide by vehicle in the first degree. . . ."

OCGA § 40-6-393 (a) also provides other ways in which vehicular homicide in the first degree may be committed. But, the only provision for a *first degree* vehicular homicide caused by a hit and run driver who does not fall within any of the other crimes is provided for in subsection (a).

The relevant provisions regarding the offense of hit and run are set forth in OCGA § 40-6-270 (a), which provides:

> The driver of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident and shall: (1) Give his name and address and the registration number of the vehicle he is driving; (2) Upon request and if it is available, exhibit his operator's license to the person struck or the driver or occupant of or person attending any vehicle collided with; and (3) Render to any person injured in such accident reasonable assistance, including the transporting, or the making of arrangements for the transporting, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such transporting is requested by the injured person. The driver shall in every event remain at the scene of the accident until fulfilling the requirements of this subsection. Every such stop shall be made without obstructing traffic more than is necessary.

OCGA § 40-6-270 (b) then explicitly provides: "If such *accident* is the proximate cause of death or a serious injury, any person knowingly failing to stop and comply with the requirements of subsection (a) of this Code section shall be guilty of a felony. . . ." (Emphasis supplied.) The legislature amended the hit and run statute, OCGA § 40-6-270 (b), in 1988, see Ga. L. 1988, p. 1499, § 1, adding the lan-

guage in subsection (b) which requires that the *accident* be the proximate cause of the victim's injuries.

Since 1988, the statute has been applied many times. See, e.g., *Scott v. State*, 230 Ga. App. 522, 525 (2) (496 SE2d 494) (1998); *Tidwell v. State*, 216 Ga. App. 8, 12 (5) (453 SE2d 64) (1994); *Dworkin v. State*, 210 Ga. App. 461 (436 SE2d 665) (1994); *Burden v. State*, 187 Ga. App. 778 (371 SE2d 410) (1988). And the cases regarding vehicular homicide apply OCGA § 40-6-393 (a) in the manner in which it is written; there are no cases since the amendment which impose the additional requirement proposed by the dissent's strained construction. See also *Bellamy v. Edwards*, 181 Ga. App. 887, 889 (3) (354 SE2d 434) (1987).

In fact in *Scott v. State*, 230 Ga. App. at 525, this court stated:

The evidence was also sufficient to support the jury's finding that after this accident, *the proximate cause of the victim's death*, Scott knowingly failed to immediately stop his vehicle at the scene of the accident or stop as close thereto as possible and forthwith return to the scene of the accident and render to the victim reasonable assistance.

(Punctuation omitted; emphasis supplied.)

Because of the change to the statute in 1988, *Collins v. State*, 172 Ga. App. 100, 101 (1) (321 SE2d 823) (1984), is no longer controlling, and the dissent's reliance on that case is misplaced since it was decided before the addition of subsection (b) to OCGA § 40-6-270. Moreover, contrary to the dissent's conclusion, neither *Miller v. State*, 236 Ga. App. 825, 828 (2) (513 SE2d 27) (1999), nor *Pitts v. State*, 253 Ga. App. 373 (559 SE2d 106) (2002), alters this analysis.

Requiring that "the accident" proximately cause the victim's injury or death makes sense. It is nonsensical to require that a driver's action in leaving the scene cause the victim's injury or death. If this were the rule, if a victim died immediately after impact, a hit and run driver could *never* be charged with first degree vehicular homicide through a violation of OCGA § 40-6-270 (b) because there would *never* be any evidence that his failure to stop and render aid caused the victim's death. To note that a driver could be charged with other methods of violating OCGA § 40-6-393 (a) or with a violation of OCGA § 40-6-393 (b) is beside the point.

The result which the dissent's construction dictates was addressed when the legislature changed the language of OCGA § 40-6-270 (b) to require that the *accident* be the proximate cause of death or a serious injury. The legislature's intent in penalizing conduct such as Klaub's in this case was clear. "Although criminal statutes must be strictly construed, they must first be construed consistent

with genuine legislative intent and in a manner which avoids absurd and contradictory results." *Reynolds v. State*, 209 Ga. App. 628, 630 (1) (434 SE2d 166) (1993).

Accordingly, the trial court's denial of Klaub's motion for directed verdict on this count was proper.

3. In his third enumeration of error, Klaub asserts that the trial court erred in failing to strike a juror for cause. We reject this argument.

Trial courts exercise broad discretion in qualifying jurors, and, on appeal, that discretion will not be disturbed in the absence of manifest abuse. *Stewart v. Stewart*, 240 Ga. App. 573, 577 (524 SE2d 267) (1999). It is well settled that:

> In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. The law does not set an impossible standard on the state to obtain jurors completely free of the mere existence of any preconceived notion as to the guilt or innocence of an accused. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Irvin v. Dowd*, 366 U. S. 717, 723 (81 SC 1639, [1642,] 6 LE2d 751) (1961).

(Citations and punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 425 (3) (349 SE2d 717) (1986).

In this case, the following exchange took place during voir dire between the prospective juror and defense counsel:

> [Counsel]: Okay. Do you know any reason, Ms. Braxton, that you couldn't be fair and impartial if you were selected to serve on this jury?
> The Juror: I don't know. It's hard to say, to be honest with you. Fair and impartial? I suppose I could be fair. I have to listen to the evidence; not a hundred percent sure, though; gut feelings.
> [Counsel]: What — well, tell me what it is that, you know, that you think you would have a problem with or you feel like might be a problem.
> The Juror: I don't know. It's kind of hard to say. I guess with my sister's experience that she had and having a hard time physically and with the court system and the insurance company and things of that nature, I don't want to say that will happen, but that's in the back of my mind. Gut feelings.

[Counsel]: Well, when you say she's had problems with the court system —.

The Juror: Well, more so with the insurance company. They wanted to take her to court possibly as — the case is still unsettled, but —.

Counsel inquired further and learned that the juror's sister was involved in a civil case arising out of the incident. The juror said that there had not been any criminal charges as a result of that accident and that the dispute involved the insurance company's refusal to pay. In that context, the following exchange with defense counsel transpired:

[Counsel]: So you feel like perhaps that might affect your deliberations if you were selected to be on this case?

The Juror: I think it would somewhat. I don't know if I could be totally fair and impartial or not.

[Counsel]: Think you might hold it against my client, based on what happened to your sister?

The Juror: Hold it against him?

[Counsel]: Well, I'm trying to figure out — you said that you wouldn't be fair and impartial. So I'm figuring, well, are you going to hold it against them?

The Juror: Well, I'm not — no. I wouldn't hold it against them, no.

[Counsel]: You just feel like it might affect —.

The Juror: It might affect my decision somehow. I mean, I don't know. I mean, I think I could be — I couldn't be totally fair and impartial. Let's put it that way.

Although the juror equivocated in responding, this is not a case like *Walls v. Kim*, 250 Ga. App. 259 (549 SE2d 797) (2001), in which the juror expressed a clear partiality for one party over the other. Instead in this case, the juror expressly denied that she would "hold it against [the defendant]." In fact, as stated above, this juror's concerns arose from a *civil* case involving a car accident; she expressed no opinion at all about the guilt or innocence of Klaub in this case. She was not asked any questions regarding her impartiality with respect to Klaub and the crimes with which he had been charged. OCGA § 15-12-164.

Many conscientious jurors are unsure at the onset of important and emotional trials as to their ability to be completely fair and impartial about evidence which they have not yet heard. In the instant case, the juror's ambivalence concerned her sister's conflict with an insurer, and her uncertainty regarding her impartiality con-

cerned that other dissimilar dispute. The trial judge observed the demeanor of the juror and listened to the juror's words during a fairly lengthy voir dire.

The issue here is not whether we would have granted the motion to strike, but whether the trial court's failure to do so was a manifest abuse of discretion. We conclude that it was not and that there was no reversible error.

4. We have reviewed Klaub's remaining enumerations and have determined that they lack merit.

As stated above, because of our holdings in this case, we remand this case to the trial court for sentencing in accordance with this opinion.

*Judgment affirmed in part, reversed in part and case remanded with direction. Eldridge, Miller, Ellington and Mikell, JJ., concur. Blackburn, C. J., and Andrews, P. J., concur in part, concur specially in part and dissent in part.*

BLACKBURN, Chief Judge, concurring fully in part, concurring specially in part and dissenting in part.

Although I concur in Divisions 1 and 4 of the majority opinion, I must respectfully dissent from Division 2 and specially concur in Division 3.

1. The law concerning hit and run cases involving a death is controlled by OCGA § 40-6-270, the hit and run statute, and OCGA § 40-6-393, the homicide by vehicle statute. OCGA § 40-6-270 provides, inter alia, for the felony of hit and run, where the defendant fails to stop at an accident which results in death. It does not matter under this Code section that the failure to render assistance did not contribute to the death. This failure is punishable by imprisonment for one to five years.

Where, however, the failure to render aid is a contributing cause of the death, such fact supports the crime of vehicular homicide through hit and run under OCGA § 40-6-393 (a) and (b), which carries a penalty of three to fifteen years. OCGA § 40-6-393 (a) provides for the crime of homicide by vehicle in the first degree, where under subsection (a), the *death* of a person *is caused by any of several violations* listed thereafter in subsections (a) through (c), including (b) the violation of OCGA § 40-6-270. The violation under subsection (b) is the failure to stop and render aid. Therefore, in order to establish homicide by vehicle in the first degree under OCGA § 40-6-393 (a), the failure to render aid must be a contributing cause of the death. This is true because OCGA § 40-6-393 (a) requires that (b), the act of hit and run, "causes the death of another person" in order to constitute homicide by vehicle under OCGA § 40-6-393 (a) and (b). Subsec-

tion (b) is a subsection of (a), which cannot be ignored in interpreting the law.

Hit and run is a separate crime from homicide by vehicle and does not merge with the homicide by vehicle, which it would under the majority's analysis. Klaub was convicted of hit and run as charged in Count 4 of the indictment and has not appealed this conviction.

Under the majority's analysis, there would be no reason for the legislature to have included "such accident is the cause of death" under OCGA § 40-6-270 (b), as every such event would result in a charge of homicide by vehicle under OCGA § 40-6-393 (a) and (b). They would have simply included hit and run as a separate section of OCGA § 40-6-393, not as a subsection of (a), which requires causation. OCGA §§ 40-6-270 (b) and 40-6-393 (a) and (b) would be the same crime under the majority's analysis, and the homicide by vehicle and hit and run convictions would have merged. The rules of statutory construction require that statutes be interpreted in such a way as to give meaning to all portions thereof, where possible. See *Joiner v. State*, 239 Ga. App. 843, 845 (1) (b) (522 SE2d 25) (1999).

OCGA § 40-6-393 (a) provides five different ways in which one may commit vehicular homicide in the first degree, where the listed violation contributes to the death, including through the violation of: subsection (b) of OCGA § 40-6-270 (hit and run) and OCGA § 40-6-390 (reckless driving).

To complete this statutory scheme, OCGA § 40-6-393 (b) provides:

> Any person who causes the death of another person, without an intention to do so, by violating any provision of this title other than subsection (a) of Code Section 40-6-163 or subsection (b) of Code Section 40-6-270 or Code Section 40-6-390 or 40-6-391 or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the second degree *when such violation is the cause of said death* and, upon conviction thereof, shall be punished as provided in Code Section 17-10-3.

(Emphasis supplied.) This provision makes it clear that the division between first degree and second degree homicide is based on the statutory violation which is the contributing cause of the death, not merely the accident itself.

In each type of vehicular homicide in the first degree, a different act contributing to the ultimate homicide is being proscribed. In one type, the contributing cause of death is improperly driving around a school bus. In others, the contributing causes are driving recklessly,

driving under the influence, and improperly fleeing police. And, in hit and run cases, the proscribed act is failing to stop and render assistance. Under all these scenarios, the contributing cause triggers vehicular homicide because the proscribed act causes the death. In just this way, a failure to stop and render assistance must be a contributory factor to the death of the victim for "hit and run vehicular homicide" to be a viable charge.

The majority appears to overlook this explicit legislative scheme, stating: "It is nonsensical to require that a driver's action in leaving the scene cause the victim's injury or death. If this were the rule, if a victim died immediately after impact, a hit and run driver could *never* be charged with first degree vehicular homicide through a violation of OCGA § 40-6-270 (b) because there would *never* be any evidence that the failure to stop and render aid caused the victim's death." As with any other infraction, the available evidence dictates the crime with which a defendant can be charged. If a victim dies immediately, the crime simply does not fit under the aegis of OCGA § 40-6-270 (b). If, however, a victim survives the initial crash, OCGA § 40-6-270 (b) may be applicable.

None of this means, however, that a hit and run driver who causes the immediate death of the victim cannot be charged with vehicular homicide, just as Klaub was charged in the case now before us.[1] It is quite possible for a hit and run driver to be guilty of vehicular homicide in the first degree, even though the other driver dies immediately and an action for "hit and run vehicular homicide" is not viable. For example, an inebriated driver might hit another car, immediately kill the victim, and fail to stop at the accident. This, most certainly, would comprise vehicular homicide in the first degree pursuant to OCGA §§ 40-6-393 and 40-6-391 even though the driver could not be charged for "hit and run vehicular homicide." In turn, this would not mean that the driver in this hypothetical would escape liability for hit and run, a separate offense altogether under OCGA § 40-6-270. Moreover, even if the driver were not inebriated in the hypothetical above, he might still be liable for vehicular homicide in the *second* degree.

Klaub argues that the trial court erred in failing to direct a verdict of acquittal as to the charge of vehicular homicide through the violation of the hit and run statute, OCGA § 40-6-270. Specifically, Klaub argues that the State was required to prove that violation of the statute, i.e., failure to stop and render aid, was the proximate cause of the death of the victim; since expert testimony established

---

[1] We note, however, that Klaub's conviction for vehicular homicide due to reckless driving must be reversed for lack of sufficient evidence.

that the victim died within a matter of minutes, Klaub's failure to remain at the scene of the accident and render assistance was not the cause of the victim's death. We agree.

"The term and concept of proximate cause [have] been applied in vehicular homicide cases in this state for many years. [Cits.]" *Johnson v. State*.[2] "In vehicular homicide cases, the State must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." *Miller v. State*.[3] See also *Hood v. State*[4] ("[c]ausation is a required element of vehicular homicide. It must be shown that the defendant's illegal act . . . was the cause of death"). Kurtz, Criminal Offenses and Defenses in Georgia (4th ed. 1997), p. 538 ("It is clear that some relationship between the traffic violation and the death must be demonstrated.").

Where a defendant is charged with vehicular homicide through violation of the hit and run statute, it is the failure to comply with the requirements of OCGA § 40-6-270 that is the illegal act causing death. OCGA § 40-6-270 (b) provides that a person who "knowingly fail[s] to stop and comply with the requirements of subsection (a) of this Code section" is guilty of a felony. Subsection (a) requires the driver of a vehicle involved in an accident resulting in injury or death to a person, or damage to a vehicle, to stop the vehicle and (1) give his name, address, and registration number of the vehicle he is driving; (2) upon request and if it is available, exhibit his driver's license to the person struck, or the driver or occupant of or person attending the vehicle with which he has collided; and (3) render reasonable assistance to any person injured in the accident. Failure to comply with these requirements constitutes the violation of OCGA § 40-6-270 which can form the basis for prosecution for vehicular homicide under OCGA § 40-6-393. See, e.g., *Tidwell v. State*[5] (holding that an allegation that a driver left "the scene of [an] accident without fulfilling the requirements of OCGA § 40-6-270, to wit: remain on said scene to render aid to said . . . [victim] and remain for the purpose of identifying said accused's name, address, motor vehicle registration and driver's license," resulted in victim's death "adequately asserted proximate cause").

As to proximate cause,

> [a]n injury or damage is proximately caused by an act or failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in

---

[2] *Johnson v. State*, 170 Ga. App. 433, 434 (317 SE2d 213) (1984).

[3] *Miller v. State*, 236 Ga. App. 825, 828 (2) (513 SE2d 27) (1999).

[4] *Hood v. State*, 193 Ga. App. 701 (389 SE2d 264) (1989).

[5] *Tidwell v. State*, 216 Ga. App. 8, 10 (453 SE2d 64) (1995).

bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable cause of the act or omission. It is not sufficient to show that the defendant only contributed to the cause of the injury.

(Citations and punctuation omitted.) *Pitts v. State.*[6]

In light of these requirements, it is clear that in order to prove vehicular homicide through violation of OCGA § 40-6-270 (b), the State must prove that the defendant's failure to remain at the scene of the accident and render aid played a substantial part in bringing about or actually causing the death of the victim. In other words, it is the defendant's conduct in leaving the scene without rendering aid rather than the initial injury to the victim that must cause the victim's death.[7] In *Collins v. State*,[8] the defendant was convicted of first degree homicide by vehicle after he struck the victim from behind and failed to stop to render aid. On appeal, the defendant argued that the evidence was insufficient to support the verdict. This Court agreed and reversed the conviction, stating: "The record contains no evidence which would have authorized the jury to conclude that the defendant's failure to stop and render assistance caused the victim's death. Such proof is clearly required to support a conviction under the statute." Id.

In this case, the expert testimony of the forensic pathologist indicated that the victim died quickly, within ten minutes of being struck. The proximate cause of her death was the severe injury she sustained when she was struck by Klaub's vehicle. The conclusion, based on the medical evidence, is inescapable that she would have died even if Klaub had remained on the scene and rendered assistance. It cannot be said that Klaub's leaving the scene of the accident, which occurred after the victim was struck by the vehicle, actually caused or played a substantial part in bringing about the victim's death.

The State argued at trial that *Collins* dealt only with the statute, current OCGA § 40-6-270 (a), as it existed at the time of that decision, and that it was only under the earlier form of the statute that the State was required to show that the failure to stop and render aid was the proximate cause of the death. The State maintained that the statute was amended to include new OCGA § 40-6-

---

[6] *Pitts v. State*, 253 Ga. App. 373, 374-375 (559 SE2d 106) (2002).

[7] As the California Court of Appeals has succinctly expressed it, "[a]lthough a violation of [the statute] is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.'" *People v. Corners*, 176 Cal. App.3d 139, 148 (1985).

[8] *Collins v. State*, 172 Ga. App. 100, 101 (1) (321 SE2d 823) (1984).

270 (b), which provides that a violation of the statute occurs "[if] such accident is the proximate cause of death." The amended statute, concluded the State, thus removes the causation requirement that the failure to remain on the scene and render aid be the proximate cause of the death, the mere happening of the accident being a sufficient proximate cause of death.

Though the trial court was originally inclined to grant Klaub's motion for directed verdict pursuant to the decision in *Collins*, it was persuaded by the State's argument that OCGA § 40-6-270 (b) eliminated the requirement in *Collins* that the failure to render aid be the proximate cause of death.[9] We are not so persuaded.

The State has not been relieved of its obligation to prove in vehicular homicide cases that the proximate cause of the victim's death was an act or failure to act on the part of the defendant. Recent cases such as *Miller v. State* and *Pitts v. State*, both decided after the enactment of OCGA § 40-6-270 (b) and cited above, reiterate the established requirement that in order for a defendant to be convicted of vehicular homicide under OCGA § 40-6-393, which includes violations of OCGA § 40-6-270 (b), his conduct must have caused the death of the victim.

> If in a given case the injury complained of did not flow naturally and directly from the wrongful act or omission attributed to the defendant, or could not reasonably have been expected to result therefrom, or would not have resulted therefrom but for interposition of some independent, unforeseen cause, the defendant's such antecedent wrongful act or omission would not be the proximate cause of the injury complained of.

*Miller v. State*, supra at 828. Here, the victim's death did not naturally and directly flow from Klaub's wrongful omission, i.e., leaving the scene of the accident, because it was her being struck by the car, not Klaub's failing to stop, which caused her death.

It is argued that the illegal act "is the actual hit and run and not the failure to stop and render aid"; thus, a defendant could be

---

[9] The trial court was evidently persuaded to adopt the State's interpretation of the hit and run statute, at least in part, by the fact that OCGA § 40-6-393 refers to a violation of subsection (b) rather than subsection (a) of OCGA § 40-6-270. We agree with Klaub that subsection (b) is referenced because it is the subsection which involves death and would thus provide a basis for vehicular homicide, while subsection (c) concerns "an injury other than a serious injury," which would not support a conviction for vehicular homicide. Subsection (a) involves all situations in which a driver would be required to stop, provide information, and render assistance, including situations which involve only damage to a vehicle, and would not be a proper basis for vehicular homicide.

charged with vehicular homicide under OCGA § 40-6-270 even if the victim dies immediately. This argument effectively removes the causation element from hit and run vehicular homicide cases and creates a presumption in favor of the State. Beyond that, it requires the performance of futile acts. Under such a reading of the statute, a driver would be required to supply to a deceased driver his name, address, and registration number, show the deceased his driver's license, and render assistance to the deceased. "Although criminal statutes must be strictly construed, they must first be construed consistent with genuine legislative intent and in a manner which avoids absurd and contradictory results." *Reynolds v. State*.[10] The law does not require a futile or useless act. *Nowlin v. Davis*.[11]

It is, then, leaving the scene of the accident and failing to render aid which OCGA § 40-6-270 criminalizes as hit and run. *Langlois v. Wolford*.[12] See also *Dworkin v. State*[13] ("Subsections (b) and (c) (1) of [§ 40-6-270] proscribe as criminal conduct, 'knowingly failing to stop and comply with the requirements of (the Code section).' "). Leaving the scene of the accident is the culpable act which provides the basis for a vehicular homicide conviction, and it is that act which must be proven to have caused the victim's death. The accident cannot substitute for the culpable act of the defendant as the proximate cause of the injury.

At trial, the State also brought the case of *Scott v. State*[14] to the attention of the trial judge. In that case, it is said:

> The evidence was also sufficient to support the jury's finding that after this accident, "the proximate cause of (the victim's) death," Scott "knowingly fail(ed)" to "immediately stop (his) vehicle at the scene of the accident or . . . stop as close thereto as possible and forthwith return to the scene of the accident and . . . (r)ender to (the victim) reasonable assistance. . . ." OCGA § 40-6-270 (a) and (b).

We cannot say that this decision authorizes the abandonment of the established requirement that the State prove that a defendant's conduct was the proximate cause of death in a case charging vehicular homicide under OCGA § 40-6-393. We find, therefore, that the trial court erred in failing to grant a directed verdict of acquittal as to the charge of homicide by vehicle in the first degree through violation of OCGA § 40-6-270.

[10] *Reynolds v. State*, 209 Ga. App. 628, 630 (1) (434 SE2d 166) (1993).
[11] *Nowlin v. Davis*, 245 Ga. App. 821, 822 (538 SE2d 900) (2000).
[12] *Langlois v. Wolford*, 246 Ga. App. 209, 210 (539 SE2d 565) (2000).
[13] *Dworkin v. State*, 210 Ga. App. 461, 463 (436 SE2d 665) (1993).
[14] *Scott v. State*, 230 Ga. App. 522, 525 (496 SE2d 494) (1998).

2. In his third enumeration of error, Klaub asserts that the trial court erred in failing to strike a juror for cause. Although I do not feel the trial court's ruling was reversible error under the facts of this case, I write separately to voice my concerns.

"The test for disqualification for favor or partiality under OCGA § 15-12-164 (a) is whether a potential juror's mind is not 'perfectly impartial between the state and the accused.'" *Cannon v. State*.[15] "When ruling on a potential juror's qualifications, the trial court must make a factual determination based on all the circumstances known to the court, including, but not limited to, the juror's own opinion of his impartiality." *Lively v. State*.[16]

In this case, the juror's responses to voir dire raised grave concerns about her ability to be impartial. The trial court made no inquiry into the juror's belief that she might not be fair and impartial and refused to strike the juror for cause.

Trial courts should be guided in these cases by the concerns raised in *Walls v. Kim*.[17] Whether a case is civil or criminal, any indication by a juror of an inability to be impartial should be investigated by the trial court. The juror should be excused for cause if there is a reasonable likelihood of bias, favor, or an inability to be impartial for the reasons stated in *Walls*, supra.

I am authorized to state that Presiding Judge Andrews joins in this opinion.

DECIDED APRIL 12, 2002 — 

*Anthony C. Procacci, John R. Mayer*, for appellant.
*Paul L. Howard, Jr., District Attorney, Rhonda B. Rusnak, Amira S. AbuBakr, Assistant District Attorneys*, for appellee.

---

[15] *Cannon v. State*, 250 Ga. App. 777, 778 (1) (552 SE2d 922) (2001).
[16] *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992).
[17] *Walls v. Kim*, 250 Ga. App. 259 (549 SE2d 797) (2001).