A05A1265. STEELE v. THE STATE.
(621 SE2d 606)

MIKELL, Judge.

Brett Steele appeals from convictions for second degree homicide by vehicle (Count 2) and failure to report an accident resulting in injury (Count 3).[1] Steele contends: (1) insufficient evidence supports his convictions; (2) the trial court erred in its instructions to the jury; and (3) the indictment was fatally defective. For reasons that follow, we affirm in part and reverse in part.

> On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this

---

[1] The jury found Steele not guilty of first degree homicide by vehicle, failure to render assistance for injury suffered in an accident, and reckless conduct.

court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[2]

Viewed in this light, the record shows that the decedent, Travis Starr, fell out of the bed of a truck driven by Steele on April 17, 2003. Steele and Starr were fraternity brothers at the University of Georgia, and Starr was intoxicated at the time he fell out of the truck. Steele was the designated driver and all of the witnesses testified that he did not drink alcohol that evening. The accident occurred after 2:15 a.m., while Steele was driving six people home after the bar in which the passengers had been drinking had closed. Immediately before the accident, Starr was standing up in the truck bed beating on the roof of the truck; when the truck made a "quick sharp left turn," he fell out onto the pavement. Before the accident, Steele asked Starr to ride inside the truck and Starr refused.[3]

Steele stopped the truck within ten feet after Starr fell; Steele and several passengers saw that Starr was lying in the intersection and that he appeared to be unconscious. Starr also had "road rash" on his arm. One witness, Robby Zorich, testified that Starr was unconscious from thirty seconds to four minutes. Another witness, Benjamin Martin, testified that they picked Starr up and carried him back to the truck and that he was worried about Starr because he was unconscious. Graham Wogan testified that Starr got back into the truck under his own power and "was very strongly against" going to the hospital. Another witness, Jessica McGill, testified that there was a discussion about concussions after Starr was carried back to the vehicle and that she did not recall any discussion about taking Starr to the hospital or anyone asking Starr whether he wanted medical attention. Steele testified that he asked Starr if he wanted to go to the hospital after the accident and Starr declined. Steele acknowledged that Starr was injured on his arm after the accident and that he did not report the accident to the police.

Steele drove Starr to his apartment and the witnesses testified that Starr regained consciousness either immediately after the accident or by the time they arrived at his apartment. Martin remained at the apartment with Starr to look after him. According to Martin, Starr sat on the couch, watched television, talked, and acted normal until they fell asleep around 5:00 a.m. According to Martin, there was a discussion about taking Starr to the hospital and Starr refused to

---

[2] (Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

[3] In Georgia, it is unlawful for a passenger to ride in the uncovered bed of a pickup truck only if: (1) the passenger is under the age of 18; and (2) the truck is on an interstate highway. OCGA § 40-8-79.

go. Wogan testified that Starr was "saying some strange things" when he was first taken to his apartment and did not appear capable of making an important decision.

Starr's roommate, Ben Smith, testified that Starr walked into the apartment with assistance from Steele and Zorich. Smith learned that Starr had fallen out of a truck and hit his head. Smith mentioned that he could drive Starr to the hospital, Starr stated that he did not want to go, and Smith and Martin then decided that Starr seemed okay other than being "really drunk." Smith and Martin also discussed that Starr and his friends might get into trouble for drinking if they took Starr to the hospital. Steele testified that he asked Starr if he was sure he was okay, and Starr responded that he was fine and just wanted to sleep. Steele further testified that he and Smith discussed that Starr seemed okay and that he seemed to be just drunk.

Friends, including Steele, checked on Starr throughout the day and he told them that he wanted to sleep, which was not unusual for him. Steele testified that he told another friend around 1:00 p.m. "that Travis had fallen, you know, he might be hurt. You know, I couldn't tell." When Steele checked on Starr around 3:15 p.m., Starr was asleep. When awakened, he stated that he was okay and just wanted to be left alone.

When Starr's condition deteriorated around 8:30 or 9:00 that evening, his friends, including Steele, took him to the hospital. Dr. Donald Palsgaard testified that he saw Starr around 10:30 p.m. on April 17, 2003, in the emergency room. At that time, Starr had his eyes closed, he would not respond to verbal questioning, and he had an abrasion on his forearm. Dr. Palsgaard paged Dr. Geoffrey Cole, a neurosurgeon, to evaluate Starr because a CT scan of his brain showed a severely bruised brain in eight different locations. According to Dr. Cole, Starr's CT scan looked horrible, but he was able to primitively move things and talk. Dr. Cole testified that the delay in Starr's treatment was "terrible" for him, that it was "substantial and medically significant" and that Starr would have had a better prognosis if he had been treated earlier. After Starr was transferred to University Hospital in Augusta, he was treated by another neurosurgeon, Dr. Greg Oetting. At the time Starr arrived, he was in a coma and no longer able to follow simple commands. Despite two operations performed by Dr. Oetting, Starr died on April 25, 2003. Dr. Oetting testified that the delay in Starr's treatment was medically significant, but he did not know if earlier treatment would have prevented his death.

Starr's mother testified that Martin told her after the accident that "he should have known better" and that he "was the most sober one of the bunch."

1. Steele asserts there was insufficient evidence to support his conviction for failing to report an accident. OCGA § 40-6-273 provides:

> The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of $500.00 or more shall immediately, by the quickest means of communication, give notice of such accident to the local police department if such accident occurs within a municipality. If such accident occurs outside a municipality, such notice shall be given to the office of the county sheriff or to the nearest office of the state patrol.

Steele argues that he had no duty to report the accident because Starr's injuries appeared to be "trivial" after the accident. We disagree. Numerous witnesses testified that Starr fell from the bed of a moving truck and was unconscious after the accident. A fall from a moving vehicle with a subsequent loss of consciousness is clearly "an accident resulting in injury" for which a report to the police is required.

2. Steele also argues insufficient evidence supports his second degree vehicular homicide conviction. OCGA § 40-6-393 (b) provides that "[a]ny person who causes the death of another person, without an intention to do so, by violating any provision of this title . . . commits the offense of homicide by vehicle in the second degree when such violation is the cause of said death." Steele contends the state failed to submit sufficient proof that his failure to report the accident in violation of OCGA § 40-6-273 caused Starr's death. We disagree. Dr. Cole testified that the delay in Starr's treatment was "terrible" for him, that it was "substantial and medically significant," and that Starr would have had a better prognosis if he had been treated earlier. A jury could conclude from Dr. Cole's testimony that Steele's failure to report the accident caused Starr's death. Additionally, the jury could have concluded from Dr. Cole's testimony that Starr's death was accelerated by the delay in treatment.[4]

3. Steele contends the trial court erred by charging the jury that it did not have to find that his failure to notify the authorities was the cause of Starr's death.

The trial court charged the jury as follows:

---

[4] *Singley v. State*, 198 Ga. 212, 214-215 (1) (31 SE2d 349) (1944) (conduct causing acceleration of death due to a pre-existing condition can be considered the cause of death in a criminal case).

> With respect to Counts 1 and 2, first degree homicide by vehicle and second degree homicide by vehicle, in order to find the defendant guilty, the prosecution must prove beyond a reasonable doubt all elements of the offense and that the accident was a proximate cause of the death. . . . [I]t is not required that the defendant's failure to render assistance . . . be a proximate cause of the death.

During deliberation, the jury sent the following note to the trial court:

> The wording in charge 2 on page 10 "you that whoever shall *cause* the death of another person, without intent. . . ." Does this wording mean that the actions of the defendant had to have *caused* the death (without intent) of [Starr]? [We] ask this because on page 11 it is further clarified that "it is not required that the defendant's failure to render assistance or to notify authorities be a proximate cause of the death."

(Emphasis in original.) In response, the trial court recharged the jury that,

> [i]n order for the defendant to be found guilty of homicide by vehicle in either Count 1 or Count 2 based on failure of a duty to render assistance or failure of a duty to notify, you must find that the defendant's conduct caused the death of Travis Starr. It is not necessary that the conduct which caused the death was a violation of Georgia law. The charges alleged in Count[s] 1 and 2 arise from the defendant's alleged failure to render assistance or failure to notify authorities after engaging in conduct that allegedly caused the death.

Steele contends that his conviction for second degree vehicular homicide should be reversed because the instruction directly conflicts with OCGA § 40-6-393 (b) and the trial court improperly relied on *Klaub v. State*.[5] We agree.

"The giving of an erroneous jury instruction must be harmful to warrant reversal of a judgment of conviction, and in determining harm we examine the charge as a whole."[6] "Substantial errors in the charge on the essential elements are usually harmful as a matter of law."[7]

---

[5] 255 Ga. App. 40, 46 (2) (564 SE2d 471) (2002).

[6] (Citation omitted.) *Drake v. State*, 272 Ga. 797, 799 (3) (537 SE2d 336) (2000).

[7] (Citation omitted.) *Phelps v. State*, 192 Ga. App. 193, 195 (1) (384 SE2d 260) (1989). See also *Chase v. State*, 277 Ga. 636, 640 (2) (592 SE2d 656) (2004) ("the failure to inform the jury

Where a defendant is charged with *first degree* vehicular homicide through a violation of the hit and run statute, the state is not required to prove that a defendant's failure to stop and render assistance, rather than the accident itself, was the cause of the victim's death.[8] Rather, "[t]he illegal act involved in [the crime of first degree vehicular homicide as defined by OCGA § 40-6-393 (a)] is causing the death or injury by the accident and then failing to stop and render assistance."[9] Conversely, subsection (b) specifically provides that the violation charged in the crime of second degree vehicular homicide *must have caused* the death.[10]

Accordingly, under OCGA § 40-6-393 (b) and *Klaub*, the court's instruction is correct as to first degree vehicular homicide, but misleading as to second degree vehicular homicide. Because the court's instruction could have misled the jury into believing that it could convict Steele of second degree vehicular homicide without finding that his violation of OCGA § 40-6-273 caused Starr's death, Steele's conviction for second degree vehicular homicide must be reversed. Although the jury found Steele guilty of failure to report an accident causing injury, it is impossible to tell whether that finding served as the basis for the conviction for second degree vehicular homicide.

Steele's conviction for failure to report an accident causing injury is affirmed.

4. In light of our holding in Division 3, we need not address Steele's remaining enumeration.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 28, 2005.

*Gordon & Brown, Gerald W. Brown*, for appellant.
*Kenneth W. Mauldin, District Attorney, Matthew J. Karzen, Assistant District Attorney*, for appellee.

---

of an essential element of the crime charged is reversible error because the jury is left without appropriate guidelines for reaching its verdict") (citations omitted).

[8] *Klaub*, supra at 46 (2). Compare *Watkins v. State*, 191 Ga. App. 87, 89-90 (3) (381 SE2d 45) (1989), citing *McNabb v. State*, 180 Ga. App. 723, 725 (4) (350 SE2d 314) (1986) (in order to convict defendant of first degree vehicular homicide, causal connection must exist between defendant's violation of reckless driving statute or DUI statute and victim's death).

[9] *Klaub*, supra at 45 (2).

[10] OCGA § 40-6-393 (b).